### JOHN GALBRAITH v. E. S. W. DROUGHT.

SHERIFF'S SALE TO HIMSELF, *Void; Auctioneer.* Where an auctioneer is employed by the sheriff to cry off and sell real estate taken upon execution, and, although the sheriff be present, exercises full discretion in respect to the sale, he becomes *pro hac vice* a deputy of the sheriff, and is within the prohibitions of § 462 of the code of civil procedure; and where at such sale property is struck off by the auctioneer to himself, and thereafter, upon confirmation, deeded by the sheriff to him, such sale and deed are, in the language of the statute, to be "considered fraudulent and void," and this notwithstanding that such purchase was made as an accommodation to the former owners, and with the understanding that they might have the property upon repayment to the auctioneer of the money paid by him.

*Error from Wyandotte District Court.*

EJECTMENT, brought by *Drought* against *Galbraith*, to re-cover lot No. 20, in block No. 132, in the city of Wyandotte. Second trial at the April Term, 1880, of the district court, and judgment for the plaintiff. The defendant brings the case to this court. The opinion states the facts.

*Nathan Cree*, for plaintiff in error.

*Alden & McGrew*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: The facts in this case are these: The taxes upon a lot in Wyandotte being delinquent, proceedings were commenced in the district court, under the law of 1877, to foreclose the liens therefor. Upon such proceedings, the prop-erty was sold at sheriff's sale, and deeded to defendant in error, plaintiff below. This was his title. Plaintiff in error, defendant below, held by quitclaim from the parties who were owners at the time of the tax proceedings. The case, therefore, one in ejectment, hinges on the validity of the deed of defendant in error. The defendant in error was the auc-tioneer who, acting for the sheriff, cried off the property at the sale. The sheriff was present, and opened the sale, and perhaps sold one or two pieces of property; but the party who did the selling generally, and who, as to this particular lot, did all that was done in the matter of crying it for sale, re-ceiving bids, and striking it off, was Drought, the party to whom it was so struck off and subsequently deeded. While the sheriff, being present, had the power to interfere at any time, prolong the biddings, or otherwise control the auc-tioneer, yet the actual management and control of the sale was left with the auctioneer; he acted in the matter upon his dis-cretion; so that as to this lot, he was both seller and buyer.

By the general law of agency, one may not assume such a position, and by that law his acts are voidable. But our

statute goes further, and makes a sale like this "fraudulent and void." Section 462 of the code contains this language:

"No sheriff or other officer making the sale of property, either personal or real, nor any appraiser of such property, shall, either directly or indirectly, purchase the same; and every purchase so made shall be considered fraudulent and void."

If the sheriff had personally sold this property and struck it off to himself, no one would question the applicability of the statute. It is no less applicable here. This was a sheriff's sale. The right of the sheriff to employ an auctioneer is denied. We shall not decide this, but concede that he may so delegate his trust, he being personally present. But with the delegation goes the statute. As he may not sell to himself, neither can the auctioneer who acts for him. Each acts under the prohibition, and every sale made in disregard of that prohibition is by the statute to be "considered fraudulent and void." Proof of good faith in the actual conduct of the sale will not uphold it. The statute is absolute. It was enacted to prevent the need of such inquiry. It is a wise statute, for while the good faith of the parties to this transaction cannot be doubted, it would be very easy for an officer designing wrong to so cloak his conduct with an appearance of good faith as to render detection almost impossible. Public policy is better subserved by shutting an absolute door upon such transactions, rather than by leaving them to stand or fall upon the proof of good faith or the want of it. "The law wisely prohibits an officer, in the execution of final process, from becoming a purchaser either directly or indirectly. It is in many, if not in all states, expressly prohibited by statute, and a sale made by an officer to himself or deputy is absolutely void, as against the policy of the law." (Herman on Executions, p. 322. See also the many authorities cited in the note.)

Other facts appear which were the subject of much testimony and debate at the trial, and which have been discussed by counsel at length in their briefs. But these facts do not

avoid the force of the statute. It appears that prior to the
sale the owners of the lot, then residing in Cincinnati, wrote
to their agent in Wyandotte to try and make some arrange-
ment, if possible, to save their property. Their agent applied
to Mr. Drought, as an old friend, to help them, and he prom-
ised to advance the money and bid the property in for them.
At the time of the sale he announced that he was authorized
to bid for the owners, and in pursuance of that announcement
continued to bid and run the property up until all bidding
ceased, when he struck it off to himself, intending to convey to
them upon being reimbursed his money. The agent the same
day telegraphed to the owners the amount of the bid, but they
failed to advance the purchase-money, and Mr. D. borrowed
the money and paid the sheriff, and the deed was made to
himself. Their excuse was, that they had bought property
in Cincinnati, and could not raise the money. Mr. D. gave
them a reasonable time in which to reimburse him before in-
sisting upon his own right to the purchase. It would seem
that the announcement at the sale, of Mr. D.'s purposes in
bidding, did not affect the biddings either way, and that the
property brought all that could reasonably be expected. Mr.
D. evidently acted in the matter in the utmost good faith and
from a desire to accommodate a friend, and if the case turned
upon the fairness of the transaction, his title would properly
be upheld. He struck the property off to himself simply to
protect him in his advance of the money, and not with the
intention of speculating off from the owners or of holding
the property unless they refused to reimburse him. Notwith-
standing all these circumstances surrounding the transaction,
the fact appears that Drought was the purchaser, intending
that his purchase should inure to the benefit of the owners if
they desired, otherwise to his own. Can it be said that he
did not, "either directly or indirectly purchase," the lot?

Whether the lot-owners can so ratify proceedings and sale
prohibited by statute as to make them good, we need not in-
quire, for there is no sufficient ratification here shown. For
such there should appear, not merely knowledge of the amount

of the bid, but of all the circumstances of the sale. It does not appear that the owners knew anything further about the matter than the amount of the bid, neither is it shown, even if that were sufficient, that the agent in Wyandotte knew, either before or after the sale, of the fact that Drought was both seller and buyer, or any of the circumstances which surrounded the sale. As this sale, upon the showing made, is void, Mr. Drought can have his money refunded from the county treasury, and the judgment lien to the full original amount thereof may be enforced by a new sale.

The judgment will be reversed, and the case remanded for a new trial.

All the Justices concurring.