RANSOM PAYNE *et al.* v. THE LONG-BELL LUMBER
COMPANY *et al.*

(Filed Feb. 8, 1900.)

1. REAL ESTATE—*Sale of by Sheriff—Confirmation.* The purchaser or
assignee of the purchaser of real estate at a sheriff's sale, acquires
such an interest in the property as to entitle him to file a motion
for the confirmation of the sale, with or without the consent of
the sheriff and the confirmation relates back to the date thereof.

2. RETURN OF SHERIFF—*Power to Amend Same.* The power to amend
the return of the sheriff should be liberally construed, and with
the view to promote justice.

3. SAME—*Record Made to Speak the Truth.* Hence, it is always proper
and competent for the sheriff to amend his return in order that it
may speak the truth. If the officer in making his return has dis-
covered that he has committed an error, or has failed to state some
material facts in relation thereto, he should make application to the
court to correct and amend his return, for the purpose of obtain-
ing a record which shall contain the exact truth, and such amend-
ment should be allowed by the court in the furtherance of justice.

4. MORTGAGE—*Foreclosure of—Right of Redemption.* Where the decree in
an acti n in the forecl sure of a real estate mortgage bars all of the
defendant's interests after th sale. a 1 a motion is male unde sec-
tion 473 of the Code, to confirm the sale under the decree, and it
appears from examination of the sale that the proceedings of the
officer are regular, and in all respects have been in conformity
with the judgment and the provisions of the statute; *held*, that the
judgment debtor has no right to redeem the property, and that the
motion to confirm the sale by the purchaser or the assignee of the
purchaser at the sheriff's sale should be allowed, and further *held*,
that where the judgment creditor has made an equitable assignment
of the bid at the sheriff's sale, and the assignee has paid the pur-
chase price, the said judgment creditor has no right t have the con-
firmation proceedings dismissed, and thereby defeat the confirma-
tion of the sale.

(Syllabus by the Court.)

*Error from the District Court of Garfield County;
before John L. McAtee, District Judge.*

*W. O. Cromwell* and *John F. Curran,* for plaintiffs in error.

*Anderson & Rush,* for defendant in error, the M. E. Church; *W. R. Cowley* and *G. B. Pierce,* for defendant in error, the Long-Bell Lumber Co.

### STATEMENT OF THE CASE.

This was an action brought by the Long-Bell Lumber company on the 10th day of April, 1896, in the district court of Garfield county, against the plaintiffs in error, to recover the sum of $424.44, upon a certain promissory note, and the foreclosure of a certain mortgage executed by the defendants on the 6th day of December, 1894, on the following described real estate, to-wit: Lot 8, in block 14, in the city of Enid. · On the first day of March, 1897, the Long-Bell Lumber company recovered a judgment against the plaintiffs in error for the sum of $519.37, with interest and costs, and the foreclosure of said mortgage. On May 6, 1897, an order of sale was duly issued by the clerk of the court, directed to the sheriff, and commanding him to sell said real estate to satisfy said judgment.

It appears from the original return of the sheriff that on June 12, 1897, the sheriff, by his deputy, C. V. Porter, sold the property under said order, at a public sale, to the Long-Bell Lumber company, for the sum of $284. It further appears from the record, that on February 16, 1898, and prior to the confirmation of the sale, and before any action had been taken to have the sale confirmed, the

plaintiffs in error paid to the Long-Bell Lumber company, the plaintiff below, the full amount of said judgment and costs, and the same was satisfied on the records of the district clerk.    It further appears that on February 19, 1898, the defendant in error, the Methodist Episcopal Church, South, filed a motion in said cause asking that said sale be confirmed, and that a deed for the property be made to the Long-Bell Lumber company on the ground that the Long-Bell Lumber company had executed a bond for a deed to the church for said property, and for the further reason that the Long Bell Lumber company had declined to move for the confirmation of said sale.    It further appears from the record that on February 21, 1898, the Long-Bell Lumber company filed a motion to dismiss the proceedings, for the reason that the judgment had been satisfied by the plaintiffs in error.    This motion was overruled by the court and exception reserved.

It further appears that on February 23, 1898, the plaintiffs in error, the defendants in the court below, filed their motion to set aside the sale, because the judgments and costs had been satisfied on the 16th day of February, 1898, and because of certain irregularities in the proceedings.    This motion was overruled by the court, and exception reserved by the plaintiffs in error.

It further appears from the record that on February 23, 1898, the Methodist Episcopal Church, South, one of the defendants in error filed a second motion to confirm the sale, alleging that immediately after the said sale the Long-Bell Lumber company had sold and assigned its bid to the property, and that the sheriff had notice thereof, and that the price bid for said property, to-wit: $284, was

paid by the church to the sheriff. This motion was by the court overruled, and exception was reserved by the church.

It further appears that on the same day to-wit: February 23, 1898, the sheriff made an application to the court to amend is return upon the order of sale, to show that the notice of the sale was first published on the 10th day of May, 1897, instead of the 8th day of May, 1897, and that the last publication was made on June 12, 1897, instead of June 10, 1897, as was shown in the original return, and to further show that immediately after the sale the sheriff was notified by the church that the Long-Bell Lumber company had sold and assigned its bid to the church, and that the full amount of the bid had been paid to the sheriff by the church. The court permitted the sheriff to amend his return by showing that the notice of sale was first published on May 10, 1897, and the last publication was made on June 12, 1897, but refused to allow the sheriff to amend his return to show that the bid, immediately after the sale, was sold and assigned by the Long-Bell Lumber company to the church, and that the church had paid the amount of the bid to the sheriff. To this ruling the plaintiffs in error and church each reserved an exception.

It further appears from the record that on March 12, 1898, the first motion filed by the church to confirm the sale in the name of the Long-Bell Lumber company, was sustained, and the deed was ordered by the court to be made to the Long-Bell Lumber company. To which rulings and judgments of the court, the plaintiffs in error and the defendants in error duly excepted, and the case is brought here by the plaintiffs in error on a case-made

and cross-petition of the defendant in error, the Methodist Episcopal Church, South, to review these proceedings.

Opinion of the court by

HAINER, J.: The various questions presented by the parties' to this proceeding may be considered in three propositions:

1. Did the Methodist Episcopal Church acquire such an interest in the property after the order of sale was issued, and before the confirmation, as to entitle it to make a motion to confirm the sale?

2. Did the court err in allowing and disallowing certain amendments to be made on the return of the sheriff?

3. Did the plaintiff in the court below have the right to have the proceedings dismissed after the sale of the property, and before the confirmation, on the ground that the judgment and costs had been fully satisfied by the defendants in the court below?

It is contended by the plaintiffs in error and the Long-Bell Lumber company, that the court erred in confirming the sale upon the motion of the Methodist Episcopal Church, South, who was a mere stranger to the action, and to the confirmation proceeding. We think this contention is untenable. The bond for the deed which it is admitted was executed by the Long-Bell Lumber company, the plaintiff in the court below, to the church, on the 19th day of June, 1897, being seven days after the sheriff's sale, was in itself sufficient to give the church such a right and interest in the sale as to entitle it to move for confirmation, where it appeared that the Long-Bell Lumber company had failed or declined to do so.

There can be no question that the purchaser or assignee of the purchaser at a sheriff's sale acquires such an interest in the property as to entitle him to make a motion for the confirmation of the sale.

In *Cowden v. Cowden,* 31 Kan. 528, 3 Pac. 379, Mr. Justice Brewer said:

"A party purchasing at a sheriff's sale acquires such an interest, and becomes so far a party to the case, that he is entitled to file a motion for the confirmation of the sale, or to institute proceedings in error in this court to reverse an order setting aside the sale."

In *Galbreth v. Drought,* 29 Kan. 717, Chief Justice Horton said:

"A sale of real estate may be confirmed at any time after the sheriff has made his return of the execution or order of sale, and on the motion of any person interested therein, or on the court's own motion, and with or without the consent of the sheriff, and the confirmation of the sale relates back to the date thereof."

We are clearly of the opinion that the record in this case amply sustains the finding of the trial court, that the church acquired such an interest in the property at the sheriff's sale, and from the Long-Bell Lumber company, as to entitle it to make a motion to confirm the sale.

It is contended by the plaintiffs in error that the court erred in allowing the sheriff to amend his return. The amended return shows that the first publication was on May 10, and the last publication was on June 12. We think it was proper for the court to permit the sheriff to amend his return to show the exact date of the publication. It is always proper and competent for the

sheriff to amend his return in order that it may speak the exact truth. The power to amend the return of the sheriff should be liberally construed, and with a view of promoting justice. Mistakes are made, and these mistakes may consist either of the omission or incorrect statements of some material facts in relation to the sale of the property. If the officer in making his return has discovered that he has committed an error, or has failed to state some material facts in relation thereto, he should make application to the court to correct and amend his return, for the purpose of obtaining a record which shall contain the exact truth.

Mr. Freeman, in his excellent work on Executions, section 360, says:

"It has sometimes been said that an amendment will not be permitted when it will destroy or materially alter the effect of the original return. But this is a mistaken view. If an amendment does not alter the return in some material respect, it is hardly worth seeking permission to make it. A return may be amended by affixing to it the signature of the officer, and thus making valid that which before had no appearance of official authenticity. Returns are constantly amended in other material respects, and their whole nature is often materially transformed by cancelling the old return, and substituting therefor a return of an entirely different character. When an amendment is made, the return as amended is to be given the same effect as though it had first been put in its present form."

The record discloses that the sale was made by C. V. Porter, deputy sheriff, on the 12th day of June, 1897; that the following persons were present at the sale, and bidding upon the property, namely: R. E. King, trustee of the Methodist Episcopal Church, South; J. S.

Riley, pastor of the Christian church of Enid; and G. D. Pierce, attorney and agent for the Long-Bell Lumber company. It appears that when said property was offered for sale, the said Pierce, as agent for the Long-Bell Lumber company, bid therefor the sum of $200, and thereupon R. E. King and J. S. Riley entered into a sharp and continued competition, bidding repeatedly upon said property; that the sale continued for probably one hour; that near the closing of said sale, the bids were very small—as low as twenty-five to fifty cents each; that the said property was finally stricken off to R. E. King, trustee of the Methodist Episcopal Church, South, at the sum of $284. That immediately thereafter the said King had a conversation with the said G. D. Pierce in regard to the matter, and that it was agreed and understood between them that the bid would stand in the name of the Long-Bell Lumber company, and that the said Long-Bell Lumber company would have the sale confirmed for the benefit of the church, and that the sheriff was notified of that fact; that at the time it was also agreed and understood that the Long Bell Lumber company would execute to said church a bond for a deed to said property. It further appears from the record that the church paid the sheriff the full amount of the bid prior to the time of the confirmation of the sale. It therefore appears from the record that the property was bid in and puchased by the church at the sale; that in fact the church was the highest and best bidder, its bid being $84 dollars more than the bid of the agent of the Long-Bell Lumber company, and more than any other bidder. And when Mr. King made the bid, as trustee of the church. the deputy sheriff struck off the bid to him as the successful bidder and purchaser of the property.

But it further appears that by an agreement entered
into between Mr. King and Mr. Pierce, as agent of the
Long-Bell Lumber company, the bid was permitted to
stand in the name of the Long-Bell Lumber company.

Under these circumstances it was the plain duty of the
company, as a matter of law and equity, to faith
fully comply with its obligations. These transactions
between the company and the church clearly constituted
an equitable assignment of all its interests in and to said
property, and it was thereby estopped from setting up
any adverse right or claim as against the interests of the
church, or to do any act to defeat the confirmation of
the sale.

The sound maxim of equity jurisprudence that equity
regards that as done which ought to be done, is singu-
larly applicable to the proceedings at bar. The undoubted
effect of the execution of a bond for a deed by the Long-
Bell Lumber company to the church was to transfer all
the interest the said company had to the property of
the church. By the terms of this bond in equity, the
land ought to be conveyed to the vendee, the church, and
the purchase price ought to be transferred to the vendor,
the Long-Bell Lumber company; hence equity regards
these as done, the church as having acquired all the
interest of the company in the land, and the company
having acquired the property in the purchase price. In
other words, whatever interest the Long-Bell Lumber
company had in and to said property was vested in the
church, the church having acquired a full equitable
estate to the land, conditioned upon the confirmation of
the sale by the court, and the payment of the purchase
price to the sheriff, or to the Long-Bell Lumber company.

This doctrine is clearly enunciated by Mr. Pomeroy in his work on Equity Jurisprudence. The author, in section 368, says:

"The full significance of the principle that equity regards and treats as done what ought to be done, throughout the whole scope of its effects upon equity jurisprudence, is disclosed in the clearest light by the manner in which equity deals with executory contracts for the sale of land or chattels, which presents such a striking and complete contrast with the legal method above described. While the legal relations between the two contracting parties are wholly personal,—things in action,—equity views all these relations from a very different standpoint. In some respects, and for some purposes, the contract is executory in equity as well as at law; but so far as the interest or estate in the land of the two parties is concerned, it is regarded as executed, and as operating to trasfer the estate from the vendor and to vest it in the vendee. By the terms of the contract the land ought to be conveyed to the vendee, and the purchase price ought to be transferred to the vendor; equity therefore, regards these as done; the vendee as having acquired the property in the land, and the vendor as having acquired the property in the price. The vendee is looked upon and treated as the owner of the land; an equitable estate has vested in him commensurate with that provided for by the contract, whether in fee, for life, or for years; although the vendor remains owner of the legal estate, he holds it as a trustee for the vendee, to whom all the beneficial interest has passed, having a lien on the land, even if in the possession of the vendee, as security for any unpaid portion of the purchase money. The consequences of this doctrine are all followed out. As the vendee has acquired the full equitab'e estate,—although still wanting the confirmation of the legal title for the purposes of security against third persons,—he may convey or incumber it; may devise it by .

will; on his death intestate, it descends to his heirs, and not to his administrators; in this country, his wife is entitled to dower in it; a specific performance is, after his death, enforced by his heirs; in short, all the incidents of a real ownership belong to it."

And again, this learned author in his note to said section says:

"It is a great mistake, opposed to the fundamental notions of equity, to suppose that the equity maxim does not operate, and the vendee does not become equitable owner until and as far as he has actually paid the stipulated price.     This erroneous view has sometimes been suggested, and sometimes even held, in a few American decisions; but it shows a miscomprehension of the whole equitable theory. See, merely as an example, some of the *dicta* in *Douglas Co. v. Union Pacific R. R.*, 5 Kans. 615. In truth, the vendee becomes equitable owner of the land and the vendor equitable owner of the purchase money, at once, upon the execution and delivery of the contract, even before any portion of the price is paid. It is true that the vendee's equitable estate is incumbered or charged with a lien as security for the unpaid price, and he, therefore, may, by the enforcement of this lien upon his final default in making payment, lose his whole estate, in the same manner as a mortgagor may lose his interest by a foreclosure. But this lien of the vendor is not inconsistent with the vendee's equitable estate, any more than the equitable lien of an ordinary mortgage is inconsistent with the mortgagor's legal estate."

But it is contended by the Long-Bell Lumber company, that it had the right to have the proceedings dismissed by the court on the ground that the judgment and costs had been fully satisfied by the defendants in the court below, after the sale by the sheriff, and before the confirmation of the sale by the court. This proposition pre-

sents the question whether the mortgagee has the right to redeem his property after the sale had been made by the sheriff, and prior to the confirmation thereof by the court.

It appears from the record in this case that the Long-Bell Lumber company obtained a judgment against the defendants in the court below, on the first day of March 1897, for $519.37, with interest at the rate of 12 per cent. per annum, and costs of the action. It was decreed that the mortgage described in the petition be foreclosed, and it was further ordered by the court that in case the defendants failed, within sixty days from the date of the rendition of judgment, to pay the plaintiff the said sum of $519.37, together with interest thereon and costs, that an order of sale issue to the sheriff of said county of Garfield, commanding him to appraise, advertise and sell, according to law, the lands and tenements described in said petition, to-wit, lot 8, in block 14, of the townsite of Enid, Oklahoma. The decree further contained the provision that from and after the sale, the defendants, and all persons claiming by, through or under them, or either of them, should be forever barred and foreclosed of all right, title and interest in and to the premises sold, or any part thereof. On the 6th day of May, 1897, an order of sale was duly issued, and the sale of the real estate was made thereunder on June 12, 1897. On June 19, 1897, the Long-Bell Lumber company executed and delivered to the church a bond for a deed to said property.

We think the doctrine is well settled that a mortgagor, after sale, has no right to redeem the property, in the absence of an express statute giving him the right to such redemption.

Section 473 of our Civil Code, in relation to the confirmation of sales, reads as follows:

"If the court upon the return of any writ of execution, for the satisfaction of which any lands or tenements have been sold, shall, after having carefully examined the proceedings of the officer, be satisfied that the sale has, in all respects, been made in conformity to the provisions of this article, the court shall direct the clerk to make an entry on the journal that the court is satisfied with the legality of such sale, and an order that the officer make to the purchaser a deed for such lands and tenements; and the officer, on making such sale, may retain the purchase money in his hands until the court shall have examined his proceedings as aforesaid, when he shall pay the same to the person entitled thereto, agreeably to the order of the court."

This provision of our code was adopted from the state of Kansas, and has been construed by the supreme court of that state in a number of well considered cases.

In *New England Mortgage and Security Company v. Smith et al.* 25 Kan. 622, the court said:

"Where the decree in an action in foreclosure of a real estate mortgage bars all of the defendant's interests after the sale, and a motion is made under section 458 of the code to confirm the sale under the decree, and it appears from examination of the sale, that the proceedings of the officer in all respects have been in conformity with the judgment and the provisions of the statute, and no showing of any extrinsic circumstances of equity is presented to the court, the judgment debtor has no right to redeem, and the motion to confirm the sale should be allowed."

Mr. Chief Justice Horton, in delivering the opinion of the court in this case, said:

"Under the old practice in chancery, a sale was not completed until confirmed by the court, and the pur-

chaser was not considered as entitled to the benefit of his contract until the master's report of the purchaser's bidding was absolutely confirmed. Our practice is other-wise. The proceedings after judgment are regulated by the statute; the confirmation is founded upon the statute, and the whole duty of the court, on motion therefor, save in exceptional cases, (*Dewey v. Linscott*, 20 Kan. 684,) is to ascertain whether the proceedings of the officer have been in conformity with the judgment and the statute. If such proceedings are in all respects regular, and no extrinsic circumstances are presented, it is the duty of the court to confirm the sale. The court has no right, at its mere discretion, to release the purchaser, or permit a tender after sale."

Applying these principles to the case under consideration, we are clearly of the opinion that the court properly overruled the motion of the Long-Bell Lumber company to dismiss the confirmation proceedings, because the church was the real party in interest, and had the right to ask that the sale be confirmed in its own name, and that a deed be executed to it by the sheriff. (*Gapen v. Stephenson*, 17 Kan. 613.)

It therefore appearing that the church was the actual purchaser of the property at the sale, and the real party in interest to confirm the sale, and the Long-Bell Lumber company having refused to do so, the court should have allowed the sheriff to amend his return in accordance therewith.

The judgment of the district court is therefore modified, and the case is remanded with directions to the court below that the sheriff be allowed to amend his return so as to permit the Methodist Episcopal Church, South, to be substituted as the actual bidder and purchaser at the sheriff's sale, in place of the Long-Bell Lum-

ber company, and thereafter to confirm the sheriff's sale, and order and direct that a deed be issued to the church in accordance therewith.

McAtee, J., having presided in the court below, not sitting; all of the other Justices concurring.