In re Berryhill's Estate.

Opinion delivered Sept. 26, 1907.

(104 S. W. Rep.. 847).

1. *Courts—Appeals to Appellate Court.*

Act Cong. March 3, 1905, c. 1479, § 12, 33 Stat. 1081 (U. S. Comp. St. Supp. 1905, p. 1501) directs that appeals from the territorial District Courts be governed by acts of Congress and rules of court providing for appeals to the Circuit Court of Appeals for the Eighth Circuit from the United States Circuit Court.

2. *Sales—Highest Bidder.*

At a judicial sale the highest bidder has a legal right to the confirmation of his purchase, there being no fraud, accident or mistake, as he may be compelled by the court to pay the price bid to close the sale.

3. *Sales—Guardian—Authority of Court.* ·

. A guardian making a sale privately and by order of the court, the sale is merely advisory and may be confirmed or ignored at the discretion of the court.

4. *Same.*

Where the court ignored a lease made by the guardian of an infant and ordered that a lease should be made at an open public bidding,— the highest bidder must be confirmed by the court and the lease be executed to him.

5. *Same.*

A sealed bid made through an unauthorized bidding for the lease of the property of an infant, subsequent to the procuring of a lease from the guardian, forces abandonment of his right under the lease by the person making the bid.

Appeal from· the United States Court for the Western District of the Indian Territory; before Justice Louis Sulzbacher, June 14, 1906.

In the matter of the estate of Joseph F. ˙Berryhill, an infant. From a decree confirming a bid of a lease of the allotment of the infant and directing William Berryhill, guardian,

to execute a lease to the Galbreath Oil & Gas Company, the
Laurel Oil & Gas Company appeals.    Affirmed.

   *Hutchings, Murphey & German*, for appellant.

   *Soper, Huckleberry & Owen, Preston C. West*, and *R. B.
Thompson*, for appellees.

   LAWRENCE, J.    This is an appeal from a matter in probate
relating to the leasing of the allotment of said infant, a Creek
citizen of Indian blood, to the appellee, Galbreath Oil & Gas
Company.    This appellee company moves to dismiss the
appeal, and in the alternative to strike parts of the supposed
record.    The weight of argument of both sides is devoted to the
discussion of this motion, upon the assumption that the practice
under the Arkansas statute is in force in this jurisdiction, for
the reason that the Congress of the United States has extended,
by specific legislation, the Arkansas statutes relating to admin-
istration of the estates of decedents, guardianship of infants,
and incompetents over this territory.    Conceding that impliedly
the practice under that statute, as defined by the Supreme
Court of Arkansas, followed as an incident, yet it must be
remembered that Congress by act adopted March 3, 1905, c.
1479, § 12, 33 Stat. 1081, directed that all appeals and writs of
error taken from the United States District Courts of the Indian
Territory, and from the United States Court of Appeals of said
territory, to the United States Court of Appeals for the Eighth
circuit, should be governed by the acts of Congress and rules
of the court in accord therewith as provided for appeals and
writs of error from the Circuit Courts of the United States to
said Court of Appeals for the Eighth circuit.    The Circuit
Court of Appeals of the Eighth circuit, in a very recent decision
handed down in the case, directly in point, of Morrison vs Bur-
nette, Curator, etc., filed July 10, 1907, 154 Fed. 617, holds
that all matters of probate arising in the United States District
Courts of this territory can be reviewed only by appeal to the
United States Court of Appeals of this territory.    This disposes

of the contention on the motion, except as to that part which asks for an order striking out the parts of the record that is supposed to be improperly contained in the transcript, certified and sent up by the clerk of the court below, and as we shall determine this appeal upon the merits, we deem it unnecessary to further consider the motion.

December 8, 1905, there was entered of record the following order in said District Court, sitting at Sapulpa, Ind. Ter.: "Order Relating to Leasing of Minor's Lands for Mineral Purposes. In the United States Court in the Indian Territory, Western District of Indian Territory, at Sapulpa. Hon. Louis Sulzbacher, Presiding. Now, on this day, upon due consideration by the court, it is considered and ordered by the court that whenever a guardian desires to lease the lands of his ward for oil, gas, or mining purposes he shall file in the office of the clerk of this court in which such guardianship proceedings are pending a proper petition; that all such petitions are ordered at once referred to the master in chancery of this district, to be at once transmitted to him by the clerk, and such master is directed to examine the same and take such testimony relating thereto as he may deem fit and proper, and report his findings and conclusions together with the testimony to the court for its action; that this order shall be entered of record in the office of the clerk of this court at Sapulpa, Wewoka, Okmulgee, Eufaula, and Wagoner. Louis Sulzbacher, Judge of the United States Court, Western District of Indian Territory." Under this order the guardian of said infant, January 18, 1906, filed in said District Court his petition for leave to lease land of his said ward for the mining of oil and gas therein, and alleging that he had executed a lease to the appellee, Laurel Oil & Gas Company, for the term of his ward's minority, being 13½ years, and prayed for an order approving the same. The master in chancery, pursuant to said general order, took the testimony in writing, showing that the proposed lease covered the 160-acre

allotment of the said minor, for which a bonus of $300 was agreed to be paid, and a royalty of 10-per cent. of the production. It further appeared from the testimony that the lessee was financially and otherwise responsible. March 26, 1906, the master filed in said District Court his report of said testimony taken, and the report that subsequent to the taking of said testimony he advertised for sealed bids upon said leasing in a newspaper of general circulation published in Sapulpa, and that such bids would be received up to and including March 5, 1906; that he attended at the courthouse in Sapulpa on said date, and received the following bids: From this appellee, Laurel Oil & Gas Company, a bonus of $300 and a royalty of one-tenth; George A. Foreman bonus of $1,960 and one-eighth royalty; Francis M. Selby a bonus of $2,260 and one-tenth royalty; William P. Thompson a bonus of $800 and one-tenth royalty; and Robert W. Morrison a bonus of $1,640 and one-tenth royalty. And he then and there publicly declared the said bid of Selby the highest and best, and recommended that said guardian be directed to execute lease to said Selby. He further reported that Selby had delivered him certified check for $2,260; also reported that he found the guardian, January 18, 1906, had executed lease to said Laurel Oil & Gas Company, for which he, the master, held its certified check for the amount of the bonus, $300.

March 27, 1906, this appellant filed in said District Court its exceptions at length; those which we deem material being that the master did not follow the said order of December 8, 1905, but, instead thereof, proceeded upon his own motion to advertise for sealed bids long afterward, and did receive a number of bids, naming first the bid of this appellant for $300, and denies, as a matter of fact, that it made any sealed bid whatever, and on the contrary was present by its president at the receipt and opening of the sealed bids for the purpose of protesting, and did then and there protest, to the receiving of

the same; that there is no evidence appearing that the declared highest and best bidder is financially competent to mine..and develop said mining lease; that the lease to appellant was delivered to the master for his recommendation for approval, and for no other purpose than recommending to the court the approval of the lease to Selby; and that all the proceedings pertaining to the leasing of said land, after January 18, 1906, were void, because in contravention of said order of the court of December 8, 1905.

June 12, 1906, being of the May term of said District Court, there was entered an order as follows: "Upon the announcement by the court this afternoon that, although these lease matters were still in the breast of the court, no new sale should be made on to-morrow morning, the court expressed its reason, stating that it feared that bids would only be raised in isolated cases, that doubtful territory would be abandoned, and therefore the lands of some minors ignored, and they would not receive any bonus. Also fearing that, perhaps, combinations would be formed, and, in the end, less money bid than is now deposited. These doubts, however, have been removed, when one party guaranteed that they would offer at least 20 per cent. additional on all leases, and another party presented certified checks, which he said he would add to all of the present bids pro rata, which would make almost 60 per cent. more than the bonus now offered. The court, as then stated, deem it proper, for the best interest of the minor, that the present bids should be changed and new bids received, and the land offered to the highest bidder. Provided, however, that the parties who desire to bid upon these leases, and who make these guaranties, must file with the master in chancery a written guaranty to this effect, accompanied by a certified check covering the amounts equal to the highest bonuses already bid, together with additional sums offered, and agree that they will bid upon each separate lease to the amount equal to the highest bid now

received by the master, together with an additional pro rata amount of the difference offered, being not less than 50 per cent. of the present amounts. It having been represented in open court by the attorneys for Francis M. Selby and Robert Morrison and his associates that they doubted the court's authority to set aside its former order, and to cancel the orders for leases already signed, that they will apply to the Court of Appeals for a supersedeas, and asking the court that the sales announced for 9 o'clock a. m. on the 13th be postponed until 3 p. m., it is ordered that the master shall open the sale at 9 a. m. tomorrow but to offer for sale at the time only the leases in No. 110, Jonah Yellowhead, and No. 263, Joseph F. Berryhill, and then that he shall adjourn his sale until 3 p. m. the same date. Louis Sulzbacher, Judge."

In pursuance of said order, the master executed the same and filed his report thereof June 14, 1907, therein setting forth a list of 53 separate bids upon said lease, running in amounts from $3,000, the lowest, to $12,600, the highest—being the bid of said Galbreath Oil & Gas Company, which bid he recommended be received and the guardian ordered to execute lease therefor. On the same date the court, pursuant to said recommendation, ordered and decreed the execution of lease to said highest bidder, which was done accordingly on said date, and thereupon the court made its order, confirming the lease to said Galbreath Oil & Gas Company. From this order the appellant, Laurel Oil & Gas Company, prosecutes its appeal, and assigns 24 distinct grounds of error. Those which we deem material and necessary for us to consider are the first, being the action of the court in overruling the exceptions of appellant to master's report filed March 27, 1906; second, in refusing to confirm the lease of January 18, 1906, made by guardian to appellant; third, in making the order of June 14, 1906, directing the guardian to execute lease to the appellee, Galbreath Oil & Gas Company; fourth, making the order of June 14, 1906, confirming the lease

to said appellee; sixth to twentieth, inclusive, in overruling its exceptions No. 1 to No. 20, inclusive, filed March 27, 1906, to the master's report of that date; twenty-first to twenty-fourth, inclusive, being the overruling of appellant's requests from two to five, inclusive.   These assignments of errors may be considered under two general heads—the error of the court in denying the exceptions to the master's report recommending the acceptance and confirmation of the guardian's lease to Selby and its error in refusing its request to declare the action of the master in proceeding on his own motion to advertise for sealed bids a nullity, and the approval of the lease to appellant from the guardian.

It is to be observed that the court omitted to confirm the lease of appellant and lease of Selby, which the master recommended should be approved, as was expressed by the court in its order of June 14, 1906, "that this matter of leasing remained in the breast of the court," and thereupon ordered that the master submit the sale of the leasing of the land of this ward, Joseph F. Berryhill, to a public bidding, and thereupon the bidding resulted in a bonus of $12,600, in favor of the infant.   The report of this bid of $12,600 was approved by the court, and a lease ordered to be made to Galbreath Oil & Gas Company, appellee.   This is the first action of the court in this entire transaction, aside from the general order made for leasing December 8, 1905.   No vested right had accrued to appellant because of its private contract of leasing with the guardian January 18, 1906.   This was not like a bidding at a public sale, made under an order or decree for such sale, where the highest and best bidder acquires a legal right to a confirmation of his purchase, in the absence of fraud, accident, or mistake, for the reason that he may be compelled by the order of the court to complete his sale by paying the price bid.   Morrison vs Burnette, Curator, supra.   But a sale made by a guardian under a general order, without competition and entirely private,

is merely advisory, which may be confirmed or ignored within the court's discretion. The court below in this case ignored the action of the guardian and the unwarranted action of the master in advertising for sealed bids so far as this record discloses. This the court, in the exercise of a sound discretion, had the right to do. However, when the court in the exercise of a like discretion, directed that the leasing should be made by virtue of an open, public bidding, and at such bidding there appeared over 50 competitive bidders, and the price was raised from $300 to $12,600, it was the duty of the court to confirm the highest bid, and direct the execution of a lease to the successful bidder. It was the first authorized sale appearing in this entire transaction, from the record.

Moreover, it appears from this record that this appellant was a sealed bidder under the unauthorized bidding by the master, and this was subsequent to the making to it of the lease by the guardian January 18, 1906. This was evidence of a waiver or abandonment of the private leasing made with the guardian. It is the attempt to occupy two inconsistent positions, for it could not claim under the lease and under the sealed bid of $300. The making of this bid was the entering into a contest for the right to the property, and because it did not chance to be the highest and best bidder it cannot be allowed to shift to the lease with the guardian. In its exceptions it attempts to dispute the report of the master as to so much as alleges that it made a bid at the sealed bidding of $300. This raised an issue of fact, and could not be determined by a bare assertion in the exception. It would require the hearing of evidence, which should have been taken, submitted to the trial court, and preserved in the record by a certificate of evidence. This was not done, and therefore the master's report must stand as to this statement of fact.

The judgment of the court below is affirmed.

GILL, C. J., and CLAYTON and TOWNSEND, JJ., concur.