**ATLANTIC RICHFIELD COMPANY, Sinclair Oil Corporation and Sinclair Oil and Gas Company, Appellants,**

v.

**The STATE of Oklahoma, ex rel. The WILDLIFE CONSERVATION COMMISSION In and For said STATE et al., Appellees.**

**MABEE PETROLEUM CORPORATION, Gammill Oil Company and John C. Oxley, Appellants,**

v.

**The STATE of Oklahoma, ex rel. The WILDLIFE CONSERVATION COMMISSION In and For said STATE et al., Appellees.**

**Nos. 54234, 54245.**

Supreme Court of Oklahoma.

Feb. 8, 1983.

---

F. Lovell McMillin, Robert D. Long, David O. Blankenship, Fischl, Culp, McMillin, Kern, Chaffin & Long, Ardmore, for appellants Atlantic Richfield Co., Sinclair Oil Corp. and Sinclair Oil and Gas Co.

R. Scott Savage, Moyers, Martin, Conway, Santee & Imel, Tulsa, for appellants, Mabee Petroleum Corp., Gammill Oil Co. and John C. Oxley.

Jan Eric Cartwright, Atty. Gen., Victor G. Hill, Jr., Brent S. Haynie, Jerry C. Blackburn, Asst. Attys. Gen., Oklahoma City, for appellees.

OPALA, Justice:

The questions posed on certiorari are: [1] Does the purchaser at a judicial sale acquire any interest in the subject property prior to confirmation? and if so, [2] Is a quit claim deed, executed by the purchaser *before* the sale is confirmed, effective, after confirmation, to invest the transferee with legal title? and [3] When the purchaser at partition sale was the common source of title for *all* parties in a quiet-title suit, was an alleged collusion between him and the land's court appraiser (his immediate transferee who was then under legal disability, pursuant to 12 O.S. 1981 § 769,[1] to purchase the property directly or indirectly) a defect material in determining which of the purchaser's successors-in-interest held superior title?[2]

We hold that: (a) upon payment of the purchase price, the buyer at judicial sale acquires equitable title to the subject property, which may be transferred by quit-claim deed prior to judicial confirmation of the sale; (b) upon the court's confirmation, equitable title so transferred will ripen into full legal title; and (c) as between the parties-opponent herein, whose titles—derived through a common source—stand affected by the same infirmity, the one holding the older title from that source must prevail.

The State of Oklahoma, ex rel. the Wildlife Conservation Commission [State], sought to quiet its title in certain Latimer County land. The State derived its title by a 1935 warranty deed from J.W. Martin [Martin] who acquired title by a 1930 quit

---

1. The pertinent provisions of 12 O.S.1981 § 769 are: " * * * No sheriff or other officer making the sale of property, either personal or real, nor any *appraiser* of such property, *shall either directly or indirectly, purchase the same;* and *every purchase so made shall be considered fraudulent and void.*" [Emphasis added].

2. It is suggested in concurring opinion that there is here no need to address the validity of the partition sale in contest because the attack sought to be made on it was barred by an after-enacted five-year limitation period provided in 12 O.S.1981 § 93, subdivs. (1) and (6). *The cited statute was neither plead nor otherwise properly invoked. We cannot pass on its* *effect. National Zinc Co., Inc. v. Moody,* Okl., 556 P.2d 268, 269 [1976]; *Kile v. Cotner,* Okl., 415 P.2d 961, 963 [1966]; and *Greene v. Circle Ins. Co.,* Okl., 557 P.2d 422, 424 [1976]; *Marks v. McCune,* Okl., 370 P.2d 560, 562 [1962]. Nor can we here determine whether the terms of § 93, subdivs. (1) and (6), are applicable to a conveyance *from,* rather than *to,* the purchaser at a judicial sale.

The parties do not argue here that § 769 is not applicable to partition sales. Because § 769's applicability is not placed in issue, our pronouncement merely *assumes, without deciding,* that § 769 was correctly invoked.

claim deed from Carlton Weaver [Weaver]. Martin was one of three appraisers appointed by the court to valuate the property prior to its judicial sale in a partition case. Weaver purchased the property at the judicial sale and then sold it to Martin [appraiser] some two weeks later. The conveyance to the appraiser took place before judicial confirmation of the sale to Weaver. The appellants (defendants) are oil companies who, in conjunction with other defendants below, claim ownership of a fractional mineral interest in the subject property through mineral conveyances executed by Weaver in 1931 to their common predecessor in title, R.W. McKissick, after the quit claim deed to Martin had been placed of record.

The trial court found (1) that equitable title passed to Weaver at the judicial sale and thereafter to the appraiser by quit claim deed from Weaver; and following issuance of sheriff's deed, it ripened into legal title; (2) that the deed from Weaver to McKissick was executed *after* the quit claim deed to the appraiser, as well as *after* confirmation of sale and issuance of sheriff's deed—*all of which prior transfers were recorded and constituted notice to McKissick and his successors* and (3) the later purchase by the appraiser was not of itself indicative of fraud or collusion between Weaver and the appraiser.

Affirming the trial court's decree, the Court of Appeals held that (1) a quit claim deed may effectively transfer to another equitable title obtained by a purchaser at a judicial sale prior to judicial confirmation; and that following such confirmation, the equitable title so transferred would ripen into full legal title; and (2) that Martin, as the property's appraiser, held title that was merely voidable and thus not subject to collateral attack in the instant suit.

We granted certiorari on the petition of the appellants (oil companies) and now reaffirm the trial court's decree.

## I.

■ The oil companies question the sufficiency of Weaver's title at the time he executed the quit claim deed to the appraiser, i.e. before confirmation of sale and execution of the sheriff's deed. The law is well settled that a successful bidder at the sheriff's sale does acquire equitable title and certain other inchoate rights of ownership in the property, subject to confirmation and payment of the purchase price.[3] Such equitable title—obtained upon payment of the purchase price to the sheriff—can effectively be quit claimed to another prior to confirmation. When, following confirmation of sale and the delivery of the sheriff's deed, legal title becomes vested in the purchaser, it will inure to the benefit of his prior grantee.[4]

## II.

Oil companies contend that an appraiser in a partition action cannot, *either directly or indirectly,* purchase the appraised lands at a subsequent sheriff's sale and that title to property acquired by an appraiser is void *ab initio* because the statutory disability which attaches to him is personal and perpetual.

■ The predecessor of § 769 (§ 5171, 1910 Revised Laws)—along with other statutes governing judicial sales—was taken from the laws of Kansas. In 1930, when the sale in question occurred, § 5171 provided that "... [n]o sheriff or other officer making the sale of property, either personal or real, nor any appraiser of such property, shall, either *directly* or *indirectly,* purchase the same; and every purchase so made shall be considered fraudulent and void."[5] [Emphasis added]. This language appears in substantially the same form in the successor

---

3. *In re Berryhill's Estate,* 104 S.W. 847, 850 [I.T.1907]; *Payne v. Long-Bell Lumber Co.,* 9 Okl. 683, 60 P. 235, 237 [1900]; *Harris v. Stevens,* 84 Okl. 196, 202 P. 1024, 1026 [1922].

4. *Reasor v. Marshall,* 359 Mo. 130, 221 S.W.2d 111, 115 [1949]; *Edwardsville Railroad Co. v. Sawyer,* 92 Ill. 377, 382 [Ill.1879].

5. Ch. 60, Art. XXIII, § 5171, Revised Laws of Oklahoma, 1910.

statute (§ 769).[6] When the law was adopted in Oklahoma, Kansas had judicially construed her statute as an absolute prohibition against the purchase of property at a judicial sale by an officer conducting such sale.[7]

At the time Oklahoma adopted the Kansas statute, Kansas had not yet judicially tested its counterpart provisions with respect to *indirect sales to an appraiser.* The point pressed on us here—that an appraiser is personally forever barred from acquiring the affected property—remains unsettled in Oklahoma. Some jurisdictions have addressed this question and determined that under certain circumstances a person under the appraiser's disability may later acquire the appraised property. In those cases, the purchase was neither shown to have occurred at, nor to have been connected with, the judicial sale in which the official was involved.[8] Other jurisdictions have held that the validity of a post-sale purchase by

an official—in light of a statutory prohibition like or similar to that in § 769—depends on the official's motives.[9]

■ We need not intimate here any view on (1) whether the title acquired by Martin, the appraiser, was void or merely voidable or (2) whether the § 769 disability could be overcome by an evidentiary showing that the "indirect" acquisition of property by an official under disability from the direct purchaser at a judicial sale was neither "prearranged" nor "collusive" but one that originated from a separate transaction made under circumstances disconnected from the prior judicial sale. The trial court must be affirmed because, for the reasons to be stated, its judgment reaches a legally correct result.[10]

■ While, ordinarily, in a quiet title suit the plaintiff bears the burden of establish-

**6.** Sec. 5171, supra note 5, has been amended only once since its adoption in 1910. The present version, found in 12 O.S.1981 § 769, provides:

"All sales of lands or tenements under execution shall be held at the court house in the county in which such lands or tenements are situated, unless some other place within said county is designated by the judge having jurisdiction in the case. No sheriff or other officer making the sale of property, either personal or real, nor any appraiser of such property, shall either directly or indirectly, purchase the same; and every purchase so made shall be considered fraudulent and void."

**7.** In *Galbraith v. Drought,* 24 Kan. 590, 591 [Kan.1880] the auctioneer cried off the property to himself and later took title, upon confirmation, through the sheriff's deed.

A statute adopted from another state comes to us burdened with construction previously placed upon it by the highest court of that state. This is so because our legislature is presumed to have been aware of such construction and to have adopted the statute as so construed. *Horath v. Pierce,* Okl., 506 P.3d 548, 553 [1973]; *Brook v. Cullimore,* Okl., 436 P.2d 32, 34 [1967]; *In re Fletcher's Estate,* Okl., 308 P.2d 304, 311 [1957]; *Harness v. Myers,* 143 Okl. 147, 288 P. 285, 288 [1930]. It must hence be presumed that when § 5171 was adopted, it was intended as an absolute prohibition of a direct purchase *at sale* by an official placed, by that section, under disability to purchase.

**8.** See *Scott v. Calvit,* 2 La. 69, 70 [La.1830] where purchase by the officiating judge's brother was upheld when he subsequently transferred title to the judge. In *Woods v. Monroe,* 17 Mich. 238, 242 [Mich.1868] the successful high bidder, after the sale, deeded the property (before confirmation) to the officiating judge who stated he wanted it for a third party. These courts held that in the absence of facts showing fraudulent intent, the purchases were not void even in view of a statutory prohibition.

**9.** *Associates Financial Services v. Johnson,* 128 Ga.App. 712, 197 S.E.2d 764, 766 [1973]; *Adams v. McClary,* 12 [13] Ky.Op. 211 [Ky.App. 1885].

**10.** A correct judgment will not be disturbed on review, even when the court applied incorrect theory or reasoning in arriving at its conclusion. *Utica National Bank & Trust Co. v. Associated Producers Co.,* Okl., 622 P.2d 1061, 1066 [1981]; *Carpenter v. Carpenter,* Okl., 645 P.2d 476, 480 [1982]; *State ex rel. Commissioners of Land Office v. Landess,* Okl., 293 P.2d 574, 577 [1956]; *Davis v. Little,* Okl., 289 P.2d 666, 668 [1955]; *Skelly Oil Co. v. Globe Oil Co.,* 87 Okl. 225, 209 P. 321, 322 [1922]; *St. Louis-San Fran. R. Co. v. Matthews,* 174 Okl. 167, 49 P.2d 752, 756 [1935]. An unsuccessful party cannot complain of trial court's error when he would not have been entitled to succeed anyway. *Streeter v. Anderson,* 172 Okl. 113, 43 P.2d 53, 56 [1935].

ing the *superiority of his own title,* rather than the weakness of his adversary's,[11] when both parties derive title from a common source in their respective chains of title, the plaintiff need only establish *a valid interest* in title derived from the common source, *without necessity of showing the validity of title in the common source.*[12] Since the plaintiff need not establish title valid as against the world,[13] the effect of applying this common-source-of title doctrine is that once plaintiff's title from the common source is established, the issue is limited strictly to an inquiry as to which party has superior title from that source.

■ A common source of title is found where both parties claim under the same individual by virtue of transfers in their respective chains of title.[14] Both the State and oil companies derive title through Weaver, the purchaser at judicial sale. Because any attack launched on the theory of a prearranged judicial sale to Martin would strike at the validity of title obtained by the purchaser at that sale (since its effect would impute an infirmity not only in Mar-

tin's title but also in that of McKissick's predecessor, Weaver), oil companies cannot challenge here the State's title without derogating from their own. A party cannot claim both under and against the same deed.[15] Where both plaintiff and defendant claim title through the same party (in this case, Weaver), each side is estopped to deny the validity of such common grantor's title or his right to convey.[16] Oil companies cannot hence defeat the State's title by a claim that the purchase at judicial sale was made indirectly for one ineligible to take and hence void. This is so because their own titles are derived from the very same purchaser at sale.[17]

■ Neither party is ever required to go behind the common source to establish the validity of his title,[18] and this rule has been followed even where there was an allegation that the common source obtained title by fraud.[19] In cases addressing this question, courts have held that where both parties claim through a common source any defect in the title of the common source is immaterial.[20]

11. *Dearing v. State, ex rel. Commissioners of the Land Office,* Okl., 642 P.2d 226 [1982]; *Moore v. Barker,* 186 Okl. 312, 97, P.2d 776, 779 [1940].

12. *Harrell v. Nichols,* 86 Okl. 115, 206 P. 817, 818 [1922]; *Babcock Lumber v. Faust,* 159 Pa. Super. 19, 39 A.2d 298, 301 [1944]; *York v. James,* 62 Wyo. 184, 165 P.2d 109, 113 [1946].

13. *Spradling v. Glenn,* 95 Okl. 75, 218 P. 824, 825 [1923]; *Smith v. Reneau,* 188 Okl. 629, 112 P.2d 160, 162 [1941]; *Keith v. Lawson,* 195 Okl. 157, 155 P.2d 716, 717 [1944]; *Robertson v. Knighten,* 192 Okl. 678, 139 P.2d 601, 604 [1943]; *Smith v. Lindsey,* 89 Mo. 76, 1 S.W. 88, 89 [1886]; *Williams v. Sands,* 251 Mo. 147, 158 S.W. 47, 49 [1913].

14. *Owens v. Conyers,* 189 Ga. 793, 7 S.E.2d 675, 677 [1940].

15. *Gibson v. Lyon,* 115 U.S. 439, 448, 6 S.Ct. 129, 133, 29 L.Ed. 440, 443 [1885]; *Bybee v. Oregon & C.R. Co.,* 139 U.S. 663, 682, 11 S.Ct. 641, 645, 35 L.Ed. 305, 310 [1891]; *Robertson v. Pickrell,* 109 U.S. 608, 615, 3 S.Ct. 407, 411–412, 27 L.Ed. 1049, 1052 [1883].

16. *Combs v. Thomas,* 304 Ky. 654, 201 S.W.2d 557, 560 [1947]; *Scott v. Scott,* 347 S.W.2d 288,

290 [Tex.Civ.App.1961]; *Stewart v. Cary,* 220 N.C. 214, 17 S.E.2d 29, 35 [1941].

17. *Charles v. White,* 214 Mo. 187, 112 S.W. 545, 550 [1908]; *Smith v. Federal Land Bank,* 181 Ga. 1, 181 S.E. 149, 150 [1935].

18. *Ginaca v. Peterson,* 262 F. 904, 907 [9th Cir.1920]; *York v. James,* supra note 12; *Smith v. Lindsey,* supra note 13; *Nissim-Hadjes, Inc. v. Di Costanzo,* 197 So.2d 602, 609 [Fla.App. 1967]; *Shuck v. Shuck,* 77 N.D. 628, 44 N.W.2d 767, 771 [1950]; *Stewart v. Cary,* supra note 16 at 34.

19. *Barnett v. Mimick,* 13 Ky.Law.Rep. 503, 17 S.W. 334, 335 [1891]; *Beasley v. Rowly,* 52 S.W. 322, 324 [Tenn.1898]; *Buchanan v. St. Louis & M.R. Co.,* 253 F. 698, 703 [8th Cir. 1918].

20. The validity of the judicial sale is not in issue here. *All titles derived from Weaver are either equally valid or equally defective. Nissim-Hadjes v. Di Costanzo,* supra note 18; *Shuck v. Shuck,* supra note 18; *Harrison Machine Works v. Bowers,* 200 Mo. 219, 98 S.W. 770, 775 [1906].

■ The only question here at issue is whether the State or oil companies hold the better title from Weaver.[21] Ordinarily, as between grantees of the same individual (i.e., between Martin and McKissick), the one holding the older title will prevail,[22] and the defense of a bona fide purchaser is not available when the party claiming under the newer title had notice of the prior claim at the time his title was obtained.[23] This view is compatible with the concepts embodied in our recording statutes. These statutes provide an orderly system for giving publicity as to the identity of persons who hold title to real property.[24]

■ The trial court found that, at the time of Weaver's conveyance to McKissick, the deed from Weaver to Martin, along with the confirmation of sale and the sheriff's deed, was already filed of record and that this constituted notice to McKissick.[25] Under our recording statutes, the State's title, derived directly, from Weaver, is prior and thus stronger,[26] and the State clearly is entitled to the equitable relief sought.[27]

Judgment of the trial court quieting title to the subject real property is affirmed.

BARNES, C.J., and IRWIN, LAVENDER and HARGRAVE, JJ., concur.

**21.** Martin's statutory disability is immaterial to this determination. *Riley v. O'Kelly,* 250 Mo. 647, 157 S.W. 566, 568 [1913].

**22.** *Stewart v. Cary,* supra note 16 at 33; *Senechal v. Senechal,* 79 S.D. 416, 112 N.W.2d 618, 621 [1962]. Under the common-law maxim, *Qui prior est tempore, potior est jure* (He who is prior in time has the superior right in law), priority in time gives preference in law and, as between parties having equally weak or defective titles, the one who is stronger in time (prior) must win, *Wailes v. Cooper,* 24 Miss. 208, 230 [1852]; see also Browder, Cunningham & Julin, *Basic Property Law,* 2nd Ed., West 1973, p. 858.

**23.** *Texas Consolidated Oils v. Bartels,* 270 S.W.2d 708, 712 [Tex.Civ.App.1954]; *Cleary Petroleum Corp. v. Harrison,* Okl., 621 P.2d 528, 531 [1980].

**24.** 16 O.S.1981 §§ 15 and 16.

**25.** The terms of 25 O.S.1981 § 13 provide: "Every person who has actual notice of circumstances sufficient to put a prudent man upon

SIMMS, V.C.J., and WILSON, J., concur in result.

HODGES and DOOLIN, JJ., dissent.

SIMMS, Vice Chief Justice, specially concurring in result:

The partition sale at issue here occurred 53 years ago. In my opinion the time to challenge that sale or the subsequent transfer because of 12 O.S.1981, § 769 has long since passed.

Although I agree that the trial court correctly held in favor of the state, I cannot join in this decision. The majority gratuitously expresses in dicta that not only does § 769 apply to partition sales, but a challenge under it may be raised for the first time, indirectly a half-century later by subsequent grantees. I would simply deny certiorari, but since the majority discusses these issues at length and decides the questions posed, these observations are necessary.

First, it is not plain to me that § 769 would apply to a partition sale, even if raised in timely fashion. We have held that because of substantial differences in the nature of partition proceedings and execution sales, statutes governing sale on execution are not mandatory, but only directory for partition sales.[1]

inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself."

**26.** *Colby v. Hayes,* 186 Okl. 283, 97 P.2d 65, 67 [1940]; *Bates v. Rogers,* 178 Okl. 164, 62 P.2d 481, 484 [1936]; *Williams v. McCann,* Okl., 385 P.2d 788, 789 [1963].

**27.** We need not answer here the question whether the State's title is vulnerable to an attack by others. *The only persons with standing* to challenge the validity of the judicial sale in contest here would be the heirs of the parties to the partition action. Their claims appear to have been barred by limitations, 12 O.S.1981 § 93. See *McElhaney v. Langston,* 105 Okl. 209, 232 P. 439, 442 [1925].

**1.** See, *Hargis v. Hargis,* 181 Okl. 377, 73 P.2d 1129 (1937); *Benson v. Fore,* 136 Okl. 185, 276 P. 742, 64 A.L.R. 154 (1929).

We have at least one case, *Benson v. Fore, supra,* fn. 1, where this same circumstance of a subsequent indirect transfer of title to a commissioner in a partition action was before the Court. While not raised as an issue, the Court took care to point out the commissioner's identity, but did not find it invalidated the transaction or indicate that the identity of the commissioner/purchaser who had no prior interest in the land, would be of importance in setting aside the transaction.

Clearly, even if § 769 was once applicable, it is not raised in a timely fashion here. This is a collateral attack on a judgment and deed over 50 years old. Every statute of limitations of possible relevance has long since expired.

Proper challenge to the sale or subsequent transfer could have been made at the time by motion to set aside the sale, motion objecting to confirmation or a direct appeal on same ground.[2] We have no direct attack here. So far as we are aware, the parties in the partition action were satisfied with the amount of the commissioners' valuation, they received their fair and full share of the money, did not appeal the judgment and never challenged the subsequent transfer. Nonetheless, the majority uses this case to make § 769 into a larger than life statute; unaffected by the ordinary constraints of time and relevance.

The majority relies on the construction of this statute by Kansas when we adopted it. The decision in *Galbraith v. Drought,* 24 Kan. 421, 422 (1880) does not support the holding in this case, however. There the challenge by reason of an ineligible purchaser was initiated immediately after the sale transaction. *Galbraith* does not sanction complaint about a sale fifty years after the event.

Kansas has, in fact, rejected the rule adopted by the majority here, and held that an attack on a sale by reason of an alleged ineligible purchaser, must be brought within the applicable statute of limitations. In *Shell Oil Co. v. Board of County Commr's.,* 171 Kan. 159, 231 P.2d 220 (1951), that court held that although a county commissioner was an ineligible purchaser in a county tax foreclosure sale, an action to vacate the proceedings may not be commenced after the specific applicable statute has run. The court held that was true whether the sale and deed were considered void or merely voidable.

Title 12, O.S.1981, § 93 clearly governs actions commenced to challenge partition proceedings. It provides:

"Actions for the recovery of real property, or for the determination of any adverse right or interest therein, can only be brought within the periods hereinafter prescribed, after the cause of action shall have accrued, and at no other time thereafter:

(1) An action for the recovery of real property sold on execution, or for the recovery of real estate partitioned by judgment in kind, or sold, or conveyed pursuant to partition proceedings, or other judicial sale, or an action for the recovery of real estate distributed under decree of district court in administration or probate proceedings, when brought by or on behalf of the executor debtor or former owner, or his or their heirs, or any person claiming under him or them by title acquired after the date of the judgment or by any person claiming to be an heir or devisee of the decedent in whose estate such decree was rendered, or claiming under, as successor in interest, any such heir or devisee, within five (5) years after the date of the recording of the deed made in pursuance of the sale or proceeding, or within five (5) years after the date of the entry of the final judgment of partition in kind where no sale is had in the partition proceedings; * * *

\*      \*      \*      \*      \*      \*

(6) Numbered paragraphs 1, 2, and 3 shall be fully operative regardless of whether the deed or judgment or the precedent action or proceeding upon

---

2. See e.g., *Hargis v. Hargis,* supra, Note 1; *Brown v. Neustadt,* 145 Okl. 140, 292 P. 73 (1930); *Johnson v. Bearden Plumbing & Heat-*

*ing Co.,* 180 Okl. 586, 71 P.2d 715 (1937). See, also, *Goslen v. Waddell Inv. Co.,* 145 Okl. 269, 292 P. 362 (1930).

which such deed or judgment is based is void or voidable in whole or in part, for any reason, jurisdictional or otherwise; provided that this paragraph shall not be applied so as to bar causes of action which have heretofore accrued, until the expiration of one (1) year from and after its effective date."

The provisions regarding partition were added by Laws 1945, p. 37, § 1. Since 1946 then, 5 years has been the time limitation for attempting to set aside a deed or judgment because an allegedly ineligible purchaser took title after a partition sale.

Before 1945, the relevant time would have been 15 years under 12 O.S.1931, § 93.4, in an "action not hereinbefore provided for." Now 12 O.S.1981, § 93(4).

We have statutes of limitations to avoid just the situation which the majority creates here: allowing the rights of parties to be decided not by prior judgments of courts of law and filed documents, but by testimony about what someone did or did not do, or did or did not intend to do, fifty years ago.

I am authorized to state that Justice WILSON joins with the views expressed herein.