PETERS et al. v. BERKEMEIER et al., Appellants.

Division One, November 23, 1904.

1. **SUIT TO CANCEL DEED: Plaintiffs Out of Possession: Right to Maintain Suit: Ejectment.** Where the legal title is not in plaintiffs and they are not in possession of the land, they can maintain a suit to have the deed to the defendant in possession set aside, on the ground that it was never delivered and was a purely gratuitous conveyance. Unless they can proceed in equity in such case they are without remedy, for if they were to sue in ejectment they would fail, because, the deed having been acknowledged and wrongfully recorded, although never delivered, the records would show the legal title to be in the defendant.

2. ———: **No Delivery.** To make a deed effectual it must be delivered to the grantee or to some one for him, so that it has passed out of the control of the grantor.

3. ———: ———: **Record.** Where a deed is beneficial to the grantee, and is placed upon record by the grantor, or by some one at his direction, a delivery and acceptance will be presumed; but the recording of the deed without such direction does not presume delivery.

4. ———: ———: ———: **Acknowledgment of Blank.** The owner of land asked an attorney to draw up a deed conveying the land to defendants, but he having no blank deed at hand had the owner and his wife sign their names to some legal cap paper, and took their acknowledgments, intending afterwards to write a deed on the paper above the signatures and affix his certificate of acknowledgment thereto as notary, but he never did so, and the paper was lost. Afterwards he prepared a deed, and took it to the owner, and he and his wife executed it and he took their acknowledgments. The owner did not tell him what the consideration was to be, so he put in one dollar and love and affection. The grantor gave him no direction to deliver it to the grantee or to anyone or to have it recorded, and he kept it in his office until about two months after the grantor's death, when the grantee and another came to the office and asked him to have it recorded, and he did so. *Held*, first, that the piece of blank paper signed and acknowledged by the owner and his wife amounted to nothing, and cannot be considered in determining whether the deed in question was ever delivered; second, the deed was never delivered and should be set aside.

5. ———: ———: **Evidence of Direction to Deliver: Finding of Chancellor.** Where a witness testifies that the attorney who drew a deed said to the maker that he would give the deed to the grantee "the first time he comes to town," and the maker said, "That will be all right," and the attorney positively denies the statement, the finding of the chancellor, in a suit to set aside the deed on the ground of non-delivery, that the attorney did not make the statement, will not be overruled on appeal unless there is something in the record justifying it in finding otherwise.

Appeal from St. Charles Circuit Court.—*Hon. E. M. Hughes*, Judge.

Affirmed.

*Theodore Bruce & Son* for appellants.

(1) It is the settled law in this State that a party claiming the legal title to land, and being out of pos-

·session, cannot invoke equitable jurisdiction to remove
.a cloud from such title.  Graves v. Ewart, 99 Mo. 13;
McRee v. Gardner, 131 Mo. 599; Davis v. Sloan, 95 Mo.
.552; Janney v. Spedden, 38 Mo. 395; Odle v. Odle, 73
Mo. 289; Clark v. Ins. Co., 52 Mo. 272; Keane v. Kyne,
·66 Mo. 216; Dyer v. Krackauer, 14 Mo. App. 39; Dyer
·v. Baumeister, 87 Mo. 134.   (2)   The court erred in
·decreeing that the deed was not delivered.  Powell v.
Banks, 146 Mo. 632; Appelman v. Appelman, 140 Mo.
:311; Crowder v. Searcy, 103 Mo. 97; Tobin v. Bass,
·85 Mo. 654; Standiford v. Standiford, 97 Mo. 231;
.Hamilton v. Armstrong, 120 Mo. 623; Sneathen v.
Sneathen, 104 Mo. 209; White v. Pollock, 117 Mo. 467;
Williams v. Latham, 113 Mo. 174; Rothenbarger v.
Rothenbarger, 111 Mo. 5; Rumsey v. Otis, 133 Mo. 95;
·Banks v. Worthington, 145 Mo. 104.

· *Charles J. Walker* and *Norton, Avery & Young*
·for respondents.

(1)   In the case at bar unless the recorded deed
·was set aside, the defendant would have had a good
record title, and in order to set aside this deed, it re-
·quired the introduction of extrinsic evidence, and this
·extrinsic evidence depended entirely upon oral testi-
mony, and therefore brings this case in the same class
·of cases as Mason v. Black, 87 Mo. 329; Clark v. Ins.
·Co., 52 Mo. 272; and Railroad v. Nortoni, 154 Mo. 149.
(2)   Under the most favorable view of the case for
·the appellant, to work a delivery of the deed under the
·evidence given, it would be necessary that the court
.should find and decree that the mere act of William
Peters and his wife signing the blank sheet of legal cap
·on the twenty-first day of May, and acknowledging the
same, was such an act, perfect in itself, as to fix the
title of the land in Berkemeier, and it seems to us the
.sheerest folly that such would be the case.  Drury v.
.Foster, 2 Wall. 24; McQuie v. Peay, 58 Mo. 56; Huey

Case, 65 Mo. 689; Hammerslough v. Cheatum, 84 Mo. 20; Abbie v. Justus, 60 Mo. App. 300; Mudd v. Dillon, 166 Mo. 110.

MARSHALL, J.—This is a bill in equity to cancel a deed to one hundred and sixty acres of land, in St. Charles county, being the west half of the southeast quarter and the east half of the southwest quarter of section 29, township 47, range 1. The circuit court entered a decree for the plaintiffs, and the defendants appealed.

The plaintiffs are Henry Peters, Edward Peters, Katie Kessler and her husband, Clara Painter and her husband, Elizabeth Painter and her husband, and Annie Bornhap and her husband, who are children of William Peters, who died on October 28, 1896. The defendants are Benjamin Berkemeier and his wife, Mollie Berkemeier, she being the only other child of said William Peters. The plaintiffs claim that they and their sister, the defendant Mollie Berkemeier, are the owners as tenants in common of the land, as devisees under the will of their father, and would have inherited the same if there had been no will. The petition avers that during their father's lifetime, to-wit, on September 22, 1896, he and their mother caused to be prepared a warranty deed for said land to the defendant, Benjamin Berkemeier, their son-in-law; that they executed and acknowledged it, and left it in the hands of the scrivener, without any directions concerning its disposition; that they never delivered the deed to said Benjamin Berkemeier, nor to any one for him; that shortly after making the deed their father died; that the deed never was delivered to Berkemeier or to any one for him during their father's life; that after their father's death, said Benjamin Berkemeier wrongfully and unlawfully obtained possession of said deed and caused it to be placed upon record, and now asserts title to the

land. The prayer of the bill is for a decree cancelling the deed.

The answer denies that the plaintiffs have any interest in the land, and then pleads that William Peters "regarding with much favor and affection" his son-in-law, Benjamin Berkemeier, on May 21, 1896, conveyed the land to said Berkemeier, and duly delivered to him the deed therefor, but that after the deed was so executed and delivered it became lost or misplaced, and that to replace said lost deed said Peters, on September 22, 1896, executed the deed here in question, and delivered it to said Berkemeier, and that it was duly recorded on December 26, 1896. The answer further alleges that at the time of the execution of the said *last* deed and ever since then, said Berkemeier has been in the possession of the land.

At the trial the will of said William Peters was introduced in evidence, and it showed certain specific devises, and then the residuum of the estate, real, personal and mixed, was devised to the aforesaid children of the testator. The deed in question was also offered in evidence. It was a general warranty deed, the consideration expressed being one dollar and love and affection; was dated September 22, 1896, was duly executed, and was recorded December 26, 1896, which was about sixty days after the death of William Peters, the grantor.

The only witness for the plaintiffs was C. J. Walker, who testified that on May 21, 1896, he received word that Peters wanted him to draw his will, and that he went with Dr. Talley to Peters' house and wrote his will for him; that Peters then told him to prepare a deed to Benjamin Berkemeier to the place he was then living on (being the property in controversy here); that he had no blank deed with him, so he had Peters and wife sign their names to some legal cap paper, and took their acknowledgments to it, intending afterwards to write a deed on the paper above the signatures and to affix his acknowledgment thereto, but that he never

did so, and the paper was lost or destroyed and he never saw it any more; that Peters never gave him any direction to deliver the paper or the deed to be written on it, to Berkemeier, or to any one for him, or to have it recorded, and he never did so; that some time afterwards, of his own motion, he prepared the deed in question here, and took it to Peters, and he and his wife executed it on September 22, 1896, and he, Walker, took their acknowledgments to it; that Peters did not tell him what the consideration was to be, so he put in one dollar and love and affection; that Peters gave him no direction to deliver it to Berkemeier or to any one for him, or to have it recorded, and that he kept it in his possession until about two months after Peters' death, when Benjamin Berkemeier and Edward Peters came to his office, and one or the other of them, he could not remember which, told him to have it recorded, and he sent it to the recorder's office with a memorandum, "record, charge and return to me."

On behalf of the defendants Dr. Talley testified that he went with Mr. Walker to witness Peters' will, and that after it was executed, Peters or his wife, he could not say which, asked Walker, "Did you bring along the deed to Ben and Mollie?" that Walker answered, "No, but you and your wife sign your names to this and I will fill this out when I get back to my office and you can get it at any time." "Q. Who can get it? A. 'Ben can get it at any time,' and the old man says, 'that's all right,' and we left, and that's all I know about it;" that they then signed their names to the blank piece of paper, and Walker said, "I will give it to Ben the first time he comes to town," and took their acknowledgment and they came away.

William Shultz, another son-in-law of Peters (though which daughter he married does not appear), testified that he had a conversation with Peters a few days after the execution of the deed of September 22nd, and Peters told him that he had made a deed to Ben,

and "Ben could take it any time he wanted to, but not have it recorded until after his death;" that the deed was "at Walker's."

Ernest Sudbrock testified that Peters told him that the place was Ben's; "that nobody could take it away from him; his deed was laying at Charlie Walker's office at Wentzville."

Fred Hoener testified that a week or two after the will was made (he was a witness to the will) Peters told him "that Ben and Ed had their deed now."

Ben Berkemeier testified he was in possession of the land when the first alleged deed was made and has had possession ever since.

In rebuttal Walker testified that he had no such conversation with Peters or his wife as Dr. Talley testified to.

This was all the testimony adduced in the case. The court entered a decree for the plaintiffs and ordered the deed cancelled, and the defendants appealed.

I.

The defendants' first contention is, that the plaintiffs, not being in the possession of the land, cannot maintain this action.

In support of this contention, the defendants cite various decisions of this court, but seem to rely principally upon Keane v. Kyne, 66 Mo. 216, and Graves v. Ewart, 99 Mo. 13.

Keane v. Kyne was a bill in equity to cancel a deed on the ground that it was a forgery. This court held that the charge of forgery was not proven, but that the evidence clearly showed that the deed was genuine. It was then held that as the plaintiff was not in possession, he could not maintain the action. The result reached in that case was clearly right, and the law declared was right as far as it was stated, but it omitted one element, and that was that one in whom the title is vested can not maintain a bill in equity to remove a cloud upon the title, unless he is in possession, for if

he is not in possession, he, having the legal title, can recover possession in an action of ejectment.

Graves v. Ewart, 99 Mo. 13, was a bill in equity to cancel a deed made by virtue of a sale of the land in partition. BLACK, J., speaking for this court, said: "The question then arises whether the plaintiffs are entitled to the relief granted them. It is not alleged that the judgment was procured by fraud. There is, indeed, no proof of any fraud in that behalf, and no relief can be granted on that ground. If the plaintiffs are entitled to have that judgment and deed set aside, it is because they constitute a cloud upon their title. The plaintiffs are not in possession, nor is the land vacant. On the contrary it is in the adverse possession of some of the defendants. Since there is nothing on the face of the judgment to show that Benjamin F. Graves was dead, it will be taken as granted that, if the plaintiffs were in possession, they might have it and the deeds thereunder set aside, on the ground that they constitute a cloud upon the title. But whatever the law may be elsewhere, it is settled in this State that a party having the legal title to land, and being out of possession, can not invoke equitable jurisdiction to remove the cloud on such title. This has been the steady ruling of this court for years, as will be seen by an examination of Davis v. Sloan, 95 Mo. 552, and the cases there cited. The rule, however, does not apply where the plaintiff has only an equitable title, and the legal title is in the defendant. [Mason v. Black, 87 Mo. 329.] The rule in most of the States is thus stated by Mr. Pomeroy: 'When the estate or interest to be protected is equitable, the jurisdiction should be exercised whether the plaintiff is in or out of possession, for under these circumstances legal remedies are not possible; but, when the estate or interest is legal in its nature, the exercise of the jurisdiction depends upon the adequacy of the legal remedies. Thus, for example, a plaintiff out of possession, holding legal title, will be left to his remedy

by ejectment, under ordinary circumstances.' [3 Pom. Eq. Jur., sec. 1399, note 4.] In this case the plaintiffs' title is purely legal. There is no obstacle in the way of prosecuting an action in ejectment, and, being out of possession, they are not entitled to the relief granted, though entitled to it if in possession.''

The rule was there properly laid down ''that a party having the legal title to land, and being out of possession, cannot invoke equitable jurisdiction to remove a cloud on such title. . . . The rule, however, does not apply where the plaintiff has only an equitable title, and the legal title is in the defendant.''

And the reason of the rule is very clear. If the plaintiff has the legal title he has only to assert it to gain possession, and, if necessary, after he gets possession, he can maintain a bill in equity to clear up his title. But if the plaintiff is out of possession, and the legal title is not in him, he cannot recover in ejectment; hence, if he has any title it must be an equitable one, and if it is, then he is entitled to the aid of a court of equity, for otherwise he would have no relief at all.

This is now the law in this State. [Sneathen v. Sneathen, 104 Mo. l. c. 206 (in which Keane v. Kyne was explained); McRee v. Gardner, 131 Mo. l. c. 606; Mason v. Black, 87 Mo. 329.]

In the case at bar, the legal title is not in the plaintiffs. If they attempted to gain possession by a suit, at law, in ejectment, they would fail, because the records would show the legal title to be in the defendants. Their only remedy, therefore, is in equity, for the enforcement of their equitable title. When the deed in question is cancelled, they can then proceed by ejectment. If they had asked for possession as well as for a cancellation of the deed, a court of equity having cognizance of the case would have done complete justice and would have given them a decree for possession in

addition to the decree cancelling the deed, but the plaintiffs did not ask for possession in this action.

It follows that there was no error in the judgment of the circuit court in this regard.

## II.

The next contention of the defendants is that the circuit court erred in its finding of fact that the deed in question had never been delivered.

To make a deed effectual it must be delivered to the grantee or to some person for him, so that it has passed out of the control of the grantor. Where a deed is beneficial to the grantee, and is placed upon record by the grantor or by some one at his direction, a delivery and acceptance will be presumed. [Kane v. McCown, 55 Mo. l. c. 198; Kingman v. Buggy Co., 150 Mo. l. c. 310.]

In the case at bar the whole question as to delivery turns upon the testimony of C. J. Walker, for the testimony of Dr. Talley does not pertain at all to the deed of September 22, 1896, and relates entirely to the blank piece of paper on which Peters and his wife signed their names on May 21, 1896, and that piece of paper so signed and never filled up amounts to absolutely nothing by itself and cannot be considered in determining whether the deed in question was ever delivered. There is, therefore, no conflict in the evidence in this case upon the subject of delivery. Walker says that Peters never told him to deliver it to Ben Berkemeier, or to any one else for him, or to have it recorded, and that he held it from its date, September 22, 1896, until two months after Peters' death, to-wit, until December 26, 1896, when Ben Berkemeier and Ed Peters came to his office and one or the other of them, he cannot remember which, asked him to have it recorded, and he did so.

This wholly destroys the defendants' claim of delivery. If Peters had delivered the deed to Walker

with directions to deliver it to Berkemeier, that would have constituted a good delivery of the deed and would have placed it beyond Peters' control, and it could have been lawfully delivered by Walker to Berkemeier, even after Peters' death. [Crowder v. Searcy, 103 Mo. 97; Appleman v. Appleman, 140 Mo. 311.] But the testimony of Walker leaves no room for the application of that rule to this case, for he says positively that Peters never gave him any directions to deliver the deed to Berkemeier, or to any one for him, or to have it recorded.

The testimony of the other witnesses as to conversations with Peters, consists of loose statements, which are too unreliable to base a decree upon. Even if the testimony of Dr. Talley as to the statement that Walker is said to have made as to the first abortive deed, to the effect that he would give it to Ben, could be made to apply to the deed in question, the delivery would not be shown, for Walker denies that any such statements were made, and the chancellor believed Walker, and there is nothing in the record to cause this court to overrule the finding of fact by the chancellor.

It goes without saying that the directions of Berkemeier and of Ed Peters to Walker to have the deed recorded were worthless, and should not have been obeyed.

No delivery of the deed having been shown, and the conveyance having been purely gratuitous, the judgment of the circuit court is affirmed.

All concur, except *Robinson, J.,* absent.