## LUTHER S. SCHOOLER, ALTIE MIRA ANN YOAKUM and MARTHA ADALINE COWSERT, Appellants, v. WILLIAM NATHANIEL SCHOOLER et al.

### In Banc, May 20, 1914.

1. **CONVEYANCE: Delivery and Acceptance of Deed.** It is not essential to the delivery of a deed or its acceptance as such by the grantee, that either of those things should be shown to have been done in express terms or by direct evidence. Either or both may be established by indirect or inferential evidence.

2. ————: ————: **Presumption: Voluntary Settlement.** The presumption of the delivery of a deed and of its acceptance is stronger in a case of voluntary settlement than in a case of bargain and sale.

3. ————: **Manual Delivery of Deed.** To make a delivery of a deed, it is not necessary that it be actually handed over to the grantee, or to any one for him. It may be effected by words without acts, or by both words and acts.

4. ————: ————: **Acts and Words Amounting to Delivery: Possession of Lands.** An old man, the owner of separate tracts of land, went to a lawyer's office and had a deed drawn conveying one tract to a daughter for life with remainder to her sister's children, and another drawn conveying another tract to said sister with remainder to her children. The lawyer inclosed the deeds in separate envelopes, and inscribed on each "Deed and Abstract From" the grantor "To" the daughter named. As he was leaving the office the grantor remarked that he was not going to turn over the deeds to his daughters at once, whereupon the lawyer advised him that in order to make the deeds effective they must be delivered to the grantees, or if they were placed in the hands of a third party for the grantees such party should be notified that he (the grantor) had no further control over them and that they were the deeds of his daughters. The grantor took them to the cashier of a bank in which he kept a current account, and handed them to him, who placed them in a safety box belonging to the bank, which was generally used for keeping papers left at the bank. The grantor at the time made a statement concerning the deeds, but the cashier testified he could not recollect either the words or its substance. The grantor returned home

and apportioned the two tracts of land to his daughters, and they and their husbands took possession and thereafter until the time of the grantor's death, three years later, they held possession without dispute, fenced the land, cultivated it, received the income and paid the taxes, and caused it to be listed with the assessor as the land of the daughters, respectively, and when the assessor came to the grantor he listed as his land only the portion that had not been conveyed to the daughters, and asked the assessor if he had gotten a statement "from the girls of their property," and suggested to the assessor that he read the description as given by them, and when that was done he said the description was correct. There was testimony that after the deeds were made he stated he had given the land to his daughters in order to make them equal to their brother, ·and that he had made the gifts in remainder to the grandchildren because he wanted to do something for them in consideration for kind attention to him.   After his death the daughters called at the bank and asked that the deeds be turned over to them, which was done, thereby showing that they had been informed by their father that the deeds had been left with the cashier for them. Upon the cashier's request the deeds were returned to him. *Held,* that there was a technical delivery of the deeds to the grantees by the bank, and such delivery related back to the time they were left with the cashier, and therefore the grantor did not die intestate as to such lands.   [LAMM, C. J., and WOODSON and WALKER, JJ., dissenting.]

5. ———: **Acceptance: By Demanding Deeds.**   When the grantees named in the deeds applied to the bank in the custody of whose cashier the grantor had placed them, and demanded that they be delivered to them, acceptance was complete unless the demand was made in ignorance of the quality of the estate conveyed by the deeds.

6. ———: ———: ———: **Refusal to Exonerate One's Self from Rational Inference.**   When a party to a civil action has full power to give testimony which will exonerate himself from a rational inference of inequitable action arising out of his own conduct, and refused to do so, the conclusion will be drawn that the adverse deduction from the facts was true and could not have been disproved.   So if the two daughters, named as grantees of a life estate in the deeds deposited by the grantor with the cashier of a bank, wished to escape the rational conclusion that they knew the quality of estate conveyed and that such knowledge is to be drawn from the fact that they applied to the bank for and received the deeds, they should have testified, and denied that they had previously known the deeds conveyed to them only a life estate, and that

upon the discovery of that fact they voluntarily returned them, since it was a matter concerning which they were peculiarly qualified to speak.

Appeal from Ray Circuit Court.—*Hon. Francis H. Trimble,* Judge.

AFFIRMED.

*Farris & Divelbiss* for appellants.

(1) Without delivery, a deed passes no title. Chambers v. Chambers, 127 S. W. (Mo.) 86. (2) While a valid delivery may be made by delivering a deed to a stranger with instructions to deliver it to the grantee, still to make such delivery effectual, it must affirmatively appear that the grantor at the time he delivered the deed to the depositary, parted with all dominion and control over it, and relinquished all right to alter or recall it, intending at the time to pass the title as a present transfer. Hammershlough v. Cheatham, 84 Mo. 13; Sneathen v. Sneathen, 104 Mo. 201; White v. Pollock, 117 Mo. 472; In re Soulard's Estate, 141 Mo. 642; Powell v. Banks, 146 Mo. 620; Mudd v. Dillon, 166 Mo. 110; McNear v. Williamson, 166 Mo. 358; Peters v. Berkheimer, 184 Mo. 393; Lange v. Cullinan, 205 Ill. 365. (3) The question whether the grantor parted with all dominion and control over the deed at the time of the delivery to the third person is to be determined by reference to his intention, which is to be ascertained from the facts and circumstances attending the execution of the deed and its delivery to the third person. Lange v. Cullinan, 205 Ill. 365. (4) Subsequent acts and declarations of the grantor showing an intent or desire to give the land to the grantee do not establish that he did give it to them by the execution and delivery of a deed of conveyance, without which no title could pass. Walls v. Ritter, 180 Ill. 616; Lange v. Cullinan,.

205 Ill. 365. (5) The deed must have been put into the hands of the third person under such circumstances as to make it the duty of the latter to refuse to surrender it to the grantor, if he should afterwards call for it. Mudd v. Dillon, 166 Mo. 110; Osborne v. Eslinger, 155 Ind. 351; Emmons v. Harding, 162 Ind. 154. (6) If the grantor deposits the deed with a third party as his agent, friend or bailee, or simply for safe keeping, there is no delivery. Barrows v. Barrows, 138 Ill. 649; Osborne v. Eslinger, 155 Ind. 351. (7) The mere leaving of a deed by the grantor with a third person without instructions as to what he desires to be done with it, does not amount to a delivery. The law does not presume, when a deed is handed to a third person, that it is done with the intention of passing the title to the grantee. In order to make such act a delivery, the intention of the grantor must be expressed at the time in some unmistakable manner. Fitzpatrick v. Brigman, 130 Ala. 450; Trask v. Trask, 90 Iowa, 318; Grilly v. Atkins, 78 Conn. 380; McElroy v. Hiner, 133 Ill. 156. (8) To make the delivery to a stranger effectual, the intention with which the delivery was made must be expressed at the time. Co. Lit. 36a; Touch. 57; Tiedman, Real Prop. (2 Ed.), sec. 814; 3 Wash. Real Prop. (5 Ed.), p. 314, sec. 582; 1 Dev. on Deeds (2 Ed.), sec. 289; Jackson v. Rowland, 6 Wend. 666; Hannah v. Swarner, 8 Watts, 9; Hulick v. Scovil, 4 Gilm. 159; McElroy v. Hiner, 133 Ill. 156; Osborne v. Eslinger, 155 Ind. 351; Trask v. Trask, 90 Iowa, 318; Grilly v. Atkins, 78 Conn. 380; Fitzpatrick v. Brigham, 130 Ala. 450. (9) To be effectual, not only must the deed be delivered unconditionally and without reserve by the grantor to the third party for the use of the grantee, but the grantee must also accept it. The latter act is equally as essential as the former. Hall v. Hall, 107 Mo. 101; Powell v. Banks, 146 Mo. 620; McCune v. Goodwillie, 204 Mo. 306; McNear v. Williamson,

166 Mo. 358; Miller v. McCaleb, 208 Mo. 562; Emmons v. Harding, 162 Ind. 154. (10) The grantee must have accepted the deed in the condition in which it was delivered to the third party, and must have accepted and intended to take the title, as indicated in the deed. Powell v. Banks, 146 Mo. 620; McNear v. Williamson, 166 Mo. 367. (11) The presumption of acceptance is a rebuttable one. Brownlow v. Wollard, 61 Mo. App. 131. (12) Presumption of acceptance must give way, when, as in this case, the grantee refuses to accept the conveyance. McCune v. Goodwillie, 204 Mo. 306; Miller v. McCaleb, 208 Mo. 562; Brownlow v. Wollard, 61 Mo. App. 131; Wilsey v. Dennis, 44 Barb. 359; Owings v. Tucker, 90 Ky. 297.

*Garner, Clark & Garner* for respondents.

The only question in this case is whether there was a delivery of the deed by Nathan H. Schooler to Altie Mira Ann Yoakum. Ramsey v. Otis, 133 Mo. 95; Monroe v. Bowles, 54 La. 865; Stanford v. Stanford, 97 Mo. 233; Sneathen v. Sneathen, 104 Mo. 201. "There is no particular form necessary to effect a delivery. The law presumes much more in favor of delivery in voluntary settlements in favor of a child, wife, or near relative." Ramsey v. Otis, 133 Mo. 95.

## STATEMENT.

The two daughters and son and only heirs of Nathaniel A. Schooler, deceased, sued two of his grandchildren, being the children of the plaintiff Martha Cowsert, to quiet title to about 85 acres of land. The petition contained a second count (dismissed on the trial) which sought to set aside and annul a deed conveying the land in question to another daughter of Nathaniel A. Schooler, plaintiff Altie Yoakum, for life, with remainder in fee to two of the children of the other daughter, on the ground that it had not been delivered by the grantor, Nathaniel A.

Schooler, Sr., in his life time. Mrs. Yoakum, the life tenant in this deed, though married, was childless. Her sister, Mrs. Cowsert, the life tenant in the other deed, was married, and the two defendants to this suit were born of her first marriage and were remaindermen in the deed to Mrs. Yoakum.

The defendants pleaded title under said deed in their answer and prayed that the interest and estate of the parties be adjudged according to the terms of the deed. A jury was waived and the case submitted to the courts upon the evidence which disclosed that Nathaniel A. Schooler, Sr., was the father of the three plaintiffs; that in the fall of 1905, in company with the husband of one of his daughters, he called upon a firm of lawyers in Richmond, Missouri, and instructed them to prepare a deed and abstract of title to the land in dispute in this case, to his daughter Mrs. Yoakum, for life, with remainder in fee to the two children of his daughter Mrs. Cowsert, who were born of her first marriage, and a similar deed, to other land of about the same quantity, to his daughter, Mrs. Cowsert, with remainder in fee to her children, three in number, born of both marriages; that as to the land embraced in the last deed these plaintiffs have brought against the remaindermen a similar action to the present; that in accordance to such instructions the two deeds were prepared; that on the 23rd of October, 1905, the said Schooler returned to the office of his attorneys and signed and acknowledged both deeds; that each was then enclosed in a large envelope which was sealed up and delivered to him with a superscription on each, to-wit: ''Deed and Abstract from Nathaniel A. Schooler to [naming the grantee]''; that he remarked on leaving the office that he was ''not going to turn over the deeds to his daughters at once,'' whereupon his attorney advised him that in order to make the deeds effective they must be delivered to the grantees, or if they were placed in the hands of a

third party for the grantees, such party should be notified, that he, Schooler, had no further control of them, and that they were the deeds of his daughters; thereupon, Nathániel A. Schooler took the deeds and handed them to the cashier of the banking house who placed them in a safety box belonging to the bank, and which was generally used for keeping papers left there; it was not the private box of Mr. Schooler.

At the time the deeds were put in the hands of the cashier a statement in regard to them was made by Mr. Schooler, but the cashier testified that he could not recollect either the words or the substance of it. On that point the following questions were put to him by the court to which he answered as follows:

"By the Court, continuing: Q. And you don't recollect a solitary thing he said? A. No, sir; he handed me the papers, but I don't recollect what he said. Q. He made some statement to you, but you don't know what it was? A. No, sir; we get so many of these papers that I did not impress my mind what he said. Q. You were not the agent for Mr. Schooler for any purpose, were you? A. No."

Mr. Schooler then went to his home about twelve miles from the town, and thereafter the two tracts of land described in the two deeds made by him to his daughters, were taken possession of by them or by their husbands on their behalf, and were fenced off from each other and also fenced off from the remainder of their father's land, which consisted of about 113 acres. For the years following each of the said daughters caused the property described in their respective deeds to be assessed in their own names and the taxes were paid, and the crops grown thereon were sold by the daughters, and the money received by them or their husbands.

Their father died in December, 1908, whereupon his two daughters together called upon the cashier of the bank where their deeds had been left, and, he

being absent, they requested his assistant to deliver the deeds to them, which was done. During the afternoon of the same day the cashier of the bank, being advised of what was done, secured the return of the deeds to himself.

The evidence goes to show that when the assessor came out to the farm of Nathaniel A. Schooler, he returned for assessment only that portion of his land which he had not conveyed to his daughters, and asked the assessor if he had gotten the statement from "the girls of their property," and suggested that he, the assessor, recite the calls of the land given to him by the daughters, which was done, and which Nathaniel A. Schooler said was correct. There was other testimony that during his life time he had stated that he had made the gift of land to his daughters in order to make them equal to their brother, for whom he had been compelled to pay fines; and that he made the gifts of the remainder under the present deed to two of his grandchildren, because he wanted to do something for them in consideration for what they had done for him, by remaining at his house until they reached their majority, after their mother had left her first husband, who was their father; that he spoke to certain persons about these gifts of land to his two daughters, and gave his reasons, that he caused a house to be built on one of the tracts and said that he intended to give it to the daughter to whom the land had been conveyed; that he said the deeds "ought to be handed over, but did not say when they would be handed over;" that plaintiff, Mrs. Cowsert, stated that she knew the deed to her sister had been "fixed" by her father so that her sister's husband could not spend it.

Shortly after the two daughters returned the deeds to the cashier of the bank, they and their brother joined in the present action. After taking the case under advisement, the learned judge made a finding in favor of the grandchildren which sustained the life

estate to plaintiff, Mrs. Yoakum, with a remainder in
fee to defendants. From a judgment in accordance,
the mother of the defendants, and her sister and
brother, have prosecuted this appeal.

## OPINION.

### I.

BOND, J. (After stating the facts as above.)—In
this case both parties have a common source of title,
the father of the plaintiffs and the grandfather of the
defendants. Unless, therefore, the defendants are able
to show a valid grant of the remainder in the partic-
ular portions of their grandfather's land, described
in the deed involved in this case, they must fail in
their defense, and that property, as well as the re-
maining estate of their grandfather, will be inherited
by the plaintiffs, share and share alike. The only
assault made by the plaintiffs upon the deed in this
case, is that it was not delivered to plaintiff Mrs.
Yoakum, in the life time of her father, the grantor.
The motive of the grantor to make some provision by
this deed for the services of his two grandchildren
(the two children of Mrs. Cowsert by her first mar-
riage) who remained with the grandfather after her
separation from her first husband, is not questioned,
neither is it doubted that the provisions of the deed
were in exact accordance with the instructions given
by the grantor to his attorneys who prepared it. The
only contention of the plaintiffs is the technical one of
nondelivery.

The necessity of the delivery of a deed and its
acceptance as such by the grantee in order to validate
the conveyance of land is familiar law. [Miller v. Mc-
Caleb, 208 Mo. l. c. 578.] But it is not essential to the
delivery of a deed or its acceptance, that either of
these facts should be shown by express terms or by

direct evidence. Either or both of them may be established by indirect or inferential evidence. [Rumsey v. Otis, 133 Mo. 1. c. 95; Sneathen v. Sneathen, 104 Mo. 201; Standiford v. Standiford, 97 Mo. 231; Miller v. Lullman, 81 Mo. 1. c. 316; Tobin v. Bass, 85 Mo. 654; McNear v. Williamson, 166 Mo. 1. c. 367.]

It is also the law that the presumption of the delivery of a deed, or its acceptance in case of voluntary settlement, is stronger than in a case of bargain and sale. [Rumsey v. Otis, 133 Mo. 1. c. 95; Hamilton v. Armstrong, 120 Mo. 597; Crowder v. Searcy, 103 Mo. 97; Cannon v. Cannon, 26 N. J. Eq. 316; Williams v. Williams, 148 Ill. 1. c. 430.]

It is well stated in Cannon v. Cannon, supra, 1. c. 319: "To make delivery of a deed, it is not necessary it should be actually handed over to the grantee, or to any person for him. It may be effected by words without acts, or . . . by both acts and words. Indeed, it may be made though the deed remains in the custody of the grantor."

Tested by these principles of law, do the facts in this case show that this deed, made by Nathaniel A. Schooler to his daughter Mrs. Yoakum, conveying a life estate to her with the remainder to the adult children of her sister Mrs. Cowsert, was delivered to and accepted by the life tenant actually or by relation when the deed was turned over to the cashier of the bank? We think there is no escape from an affirmative answer to this question. The undisputed facts show that when the grantor in the deed decided to make the conveyance, as therein expressed, he went to the office of his attorney for that purpose, and took the husband of one of his daughters with him then, or on a subsequent visit, to receive the deeds after they had been prepared. It is certain that the grantor and his attorney, and inferably the accompanying husband, knew what the deeds contained, and that they were signed and acknowledged, and securely sealed in sep-

arate envelpes, upon each of which was a written statement or description showing the fact of the conveyance and the party to whom it was made. With these in his hands the grantor went to the cashier of a bank where he kept a current account, and placed the deeds in the hands of the cashier, stating at the time, what should be done with them. Unfortunately, the cashier when called to testify, was unable to recall the directions then given to him, hence, as far as regards the matters between him and Mr. Schooler, all that is available is the fact that the sealed deeds were delivered to him containing on each a written statement disclosing by whom they were made and to whom they belonged. The cashier did testify, however, that he was not the agent of the grantor for any purpose. But the grantor went home and apportioned to each of his daughters the specific tracts of land wherein he had conveyed to them a life estate, and they and their husbands took possession and enclosed the tracts by fencing them off from each other, and from the remaining lands of their father. For three years thereafter, each of the daughters asserted ownership of the particular tract which had been put in her possession by listing it for taxation, and with the aid of her husband by cultivating it and by selling the crops and receiving the money.

Their father is shown to have admitted to the assessor that the property conveyed to his daughters was correctly listed by them, and to have completely refrained from any claim of interest thereto in himself. That he notified his daughters where his deeds had been left, is shown by the fact that both of them at his death applied to, and received them from, the bank where they had been left. It would have been impossible without some previous communication from their father, for the daughters to have divined that the deeds to the land, into the actual possession of which they had been placed, had been left for them with

the cashier of the bank. The inference, therefore, is not only natural but irresistible that the two daughters had been told by their father that the deeds made to them had been put in the bank for safe-keeping and delivery. That he made no secret of his purpose to turn over the deeds as well as the property itself to his daughters, is also shown by his statements to other persons of the reasons that actuated his conveyance, his desire to equalize his daughters with their brother, and his intention to repay his two grandchildren (born of the first marriage of one of his daughters) for their care, attention, and services to himself, and his further statement that the deeds "ought to have been turned over to them." It is also impossible to draw the conclusions that the two daughters were unaware of the nature of the estate given to them. For on that subject the grantor was equally open, having taken one of their husbands with him at the time the deeds were prepared, or at the time they were directed to be prepared, and one of his daughters, having admitted her knowledge of the nature of the conveyance to her sister, as was shown by the testimony of the persons to whom she made the statement. The facts and circumstances surrounding the transaction exclude any other view, than that the matter was fully understood by the grantor and the two grantees of the life estate, and point unerringly to the conclusion that the statement which the cashier doesn't recollect, made by the grantor, was in substance, that the deeds handed over to him should be delivered to the parties whose names were inscribed upon the package as owners thereof. In view of the fact that these owners did apply for them and did get them, we think there was a technical delivery to them which under settled principles of law related back to the time the deeds were left with the cashier, and, therefore, involved a conveyance as if the whole matter had been done in the life time of the grantor. On this point it has been

conclusively said by Judge BLACK speaking for this court: "A deed delivered by the grantor to a third person to be delivered to the grantee, and by such third person delivered to the grantee, will constitute a good delivery, though the grantor is dead at the date of the last delivery; for the delivery takes effect by relation as of the date when first made to the third person. In such cases it .should appear that the grantor parted with all dominion and control over the instrument, intending it to take effect and pass the title as a present transfer. This intention may be manifested by acts, or by words, or by both words and acts." [Sneathen v. Sneathen, 104 Mo. 1. c. 209; 2 Black. Comm., 307; 4 Kent, sec. 67, pp. 454-456.]

The learned counsel for appellants cite McNear v. Williamson, supra. That case is in perfect accord with the doctrine here announced.. Besides, it was radically different as to the facts in judgment; for there the land was not delivered, while in this case the possession was turned over to the grantee immediately after the making of the deeds. Said the court in that case: "It is not claimed that there was any delivery of the premises to the plaintiff on the execution of the deed or that any was demanded then or immediately thereafter. The conduct of the parties in that respect also was inconsistent with the idea that there had been a real sale." [166 Mo. 1. c. 369.]

The learned counsel for appellants also insist that there was not sufficient proof of acceptance of the deeds by the life tenant. We cannot agree with that view, for reasons heretofore stated. Besides, when the two daughters demanded their deeds the act of acceptance was complete unless that demand was made in ignorance of the quality of the estate conveyed in the deeds. Neither of these daughters submitted themselves to an examination on this point, although it was a matter peculiarly within their knowledge. The principle is plain that when a party in a civil cause

has full power to give testimony exonerating himself from a rational inference of inequitable action arising out of his own conduct, and refuses to do so, then the conclusion will be drawn that the adverse deduction from the facts was true and could not have been disproved. So in this case if the two plaintiff daughters could have truthfully stated that they were unaware of the estate granted them and that they voluntarily returned the deeds when they discovered the exact nature of the estate conveyed, then their rights as heirs at law would have been unaffected as to the property described in the deeds. This was not done, and our conclusion is that they took the deeds with substantial knowledge of their contents and intended at the time to accept them. [16 Cyc. 1064, par. G; Werner v. Litzsinger, 45 Mo. App. 1. c. 108.]

The judgment of the trial court is correct and is affirmed. *Graves, Brown* and *Faris, JJ.,* concur; *Lamm, C. J.,* and *Woodson* and *Walker, JJ.,* dissent.