C. H. REASOR and BINA B. REASOR, (Plaintiffs) Respondents, v. KARL W. MARSHALL, as Administrator of the Estate of W. L. WRIGHT, Deceased, W. M. WRIGHT, LIZZIE STREET, MARY GANOTE and WANETA PARKER, (Defendants) Appellants, No. 40809—221 S. W. (2d) 111.

Division One, May 9, 1949.

Rehearing Denied, June 13, 1949.

*Marshall Craig* for appellant Karl W. Marshall, *James A. Finch, Jr.,* and *Finch & Finch* for appellants W. L. Wright, Lizzie Street, Mary Ganote and Waneta Parker.

*Haw & Haw, J. M. Haw* and *James Haw* for respondents.

VAN OSDOL, C.—Action to try, determine and quiet title to a tract of 260 acres of described land in Mississippi County, and

for specific performance of a contract to sell land. The trial court decreed specific performance and determined and quieted title in plaintiffs.

Plaintiffs, husband and wife, alleged that they entered into a written contract June 1, 1934, whereby they undertook to purchase of W. L. Wright, now deceased, 540 acres of land known as the Modern Woodmen tract in Mississippi County for a consideration of $12,000; that January 29, 1941, W. L. Wright conveyed 280 acres of the tract to plaintiffs, but, although plaintiffs had paid the consideration in full, Wright had failed to convey the remaining described 260 acres; and plaintiffs further alleged facts supporting a claim that May 28, 1936, W. L. Wright conveyed to plaintiffs the interest Wright had in the whole 540-acre tract, save and except Wright reserved in himself a life estate.

W. L. Wright, a widower, died intestate November 25, 1942, survived by no descendants. The defendants-appellants are the administrator of his estate; and his heirs at law—a brother, two sisters and a niece.

The defendants, heirs at law, by answer denied the execution of the contract of June 1, 1934, denied the conveyance of Wright's interest to plaintiffs, and alleged that the instrument of May 28, 1936, was testamentary in character and conveyed no present interest in the land; that the instrument of 1936 was at most a quitclaim deed, and W. L. Wright had no title at the time the instrument was executed; that the contract of 1934 was merged in the instrument of 1936 and that both the contract of 1934 and the instrument of 1936 were merged in the fee simple estate created by the warranty deed whereby W. L. Wright conveyed plaintiffs 280 acres of land in 1941.

Defendants, heirs at law, prayed for a judgment and decree determining and quieting the fee simple title to the 260-acre tract in them and for an accounting by plaintiffs for the rents and profits derived from such tract since the death of Wright.

(By counterclaim defendants, heirs at law, claimed an undivided half interest in described real property in the City of East Prairie, and half the consideration received by plaintiffs for other described real property in the City of East Prairie which property plaintiffs had conveyed. By responsive pleadings the allegations of counterclaim were, in substance, admitted by plaintiffs, and the trial court in its judgment determined the issues of counterclaim in favor of defendants. As to the issues of counterclaim, the trial court's judgment was virtually by consent and is unappealed from and final. It was further, in effect, admitted in the pleadings that the entire 540-acre tract is encumbered by the lien of a deed of trust, Geo. W. and Nella Langsdale, beneficiaries, to secure the payment of $15,000, and that the amount the lien secures should be pro rata per acreage apportioned between the 280 and 260-acre tracts.)

By answer defendant, administrator, denied the execution of the instruments, mentioned supra; and alleged that, by order of the Probate Court of Mississippi County, he had been directed to take charge of the 260-acre tract, but had been denied possession of the premises by plaintiffs. The administrator prayed for an order of possession, and for an accounting by plaintiffs for the rents and profits of the 260-acre tract since the effective date of the Probate Court order.

It was agreed "the taking of testimony on the matter of rents and profits is postponed until the Court has reached a conclusion as to the respective rights of the parties on the merits."

At the time the judgment and decree were entered the trial chancellor filed a memorandum opinion in which he stated the findings that the signature of W. L. Wright on the contract of June 1, 1934 (see Plaintiffs' Exhibit 1, infra) and the signature of Wright on the back thereof were not genuine but had been forged and the document in its entirety fabricated by plaintiff, C. H. Reasor; that the instrument of May 28, 1936 (Plaintiffs' Exhibit 2, infra) was "a deed of conveyance of the interest of W. L. Wright in the land in suit, reserving a life estate to the grantor, coupled with a rental agreement between Wright and Reasor for the life of Wright"; that the instrument of 1936 was signed by W. L. Wright and there was a sufficient delivery thereof, but, since Wright at the time had no legal title and since the document did not contain any covenant of warranty, the instrument did not carry any after-acquired title "as a legal proposition"; that Wright did at the time have an equitable interest—the right to compel another to reconvey the land—so the court construed the instrument of 1936 as a contract to convey, found the contract was not merged in the warranty deed of 1941 (see Plaintiffs' Exhibit 4, infra), and ordered specific performance.

Although the chancellor, as stated, found plaintiff C. H. Reasor had fabricated the contract of 1934 and forged the signatures of Wright on the front and back thereof, the chancellor did not apply the "clean hands doctrine" to defeat the sought relief of specific performance. The chancellor was of the opinion, however, that, had C. H. Reasor been the sole party plaintiff, his wrongdoing should and would have defeated the relief sought; but, since there was no evidence whatsoever the plaintiff wife, Bina B. Reasor, was a party to the wrongdoing of her husband and, since there was no way by which a court could deny to the plaintiff husband the relief he sought and preserve to the plaintiff wife the rights to which the chancellor believed she was entitled, specific performance should be granted to both.

We will first consider three questions which may be decisive, (1) if the contract of 1934 was fabricated and W. L. Wright's signatures thereto forged, as the trial chancellor found, then (2) what was the

effect of the instrument of 1936; (3) if the instrument of 1936 was intended to be executed as a conveyance, as the chancellor has found and as plaintiffs had alleged, was it delivered?

W. L. Wright was 82 or 83 years of age at the time of his death. Before he and plaintiffs came to Mississippi County in 1934, they had lived in Columbus, Ohio, in an apartment owned by plaintiff C. H. Reasor. "We (the Reasors) lived upstairs and he downstairs." Soon after they came to Missouri, Wright went to the home of plaintiffs and lived with them until his death, except during the flood of 1937 when plaintiffs and Wright stayed at the home of Dr. and Mrs. S. P. Martin of East Prairie. Wright had a "light stroke" about the year 1936. He died at plaintiffs' home, in 1942 as stated.

The whole tract of 540 acres was the property of the Modern Woodmen of America in 1934. W. L. Wright contracted, April 24, 1934, with the Woodmen to purchase the land. He borrowed a $500 "down payment" from one Claude Green to whom the Woodmen conveyed the land by warranty deed dated June 1, 1934, recorded December 5, 1934. Green executed notes and a deed of trust for the balance of the purchase money. And by quitclaim ▇▇▇ deed dated June 1, 1934, acknowledged and recorded December 5, 1934, Wright conveyed the land to Green.

Green testified he farmed 200 acres of the land one year, the wheat season of 1934-1935, as the tenant of Wright who had a verbal understanding with Green that, if the land were sold at a given price, Green was to receive 25% of the profit. Green paid rent to Wright. When Green quit farming the land in 1935, plaintiff C. H. Reasor "took charge of it."

A contract, "Plaintiffs' Exhibit 1," dated June 1, 1934, was introduced into evidence. It was purportedly signed by Wright and plaintiff C. H. Reasor, and purportedly witnessed by Jim Jones and Dave Ware. The "contract" purports to be an agreement whereby Wright "sells" the whole 540-acre tract, for which C. H. Reasor "is to pay" a stated consideration.

On the back of the exhibit appears endorsements of eight payments received between June 1, 1934 and December 31, 1941, aggregating $12,300, followed by the purported signature, "W. L. Wright," immediately below which is the endorsement of the receipt of payment of an additional $2000 as of November 25, 1942 (the date of Wright's death).

A receipt, "Plaintiffs' Exhibit 5," dated September 15, 1942, bearing the authentic signature of W. L. Wright, was also introduced into evidence. The receipt was typed on a printed blank, Form No. 12 B, of the Agricultural Adjustment Administration. The receipt certifies "that I have received from C. H. Reasor and Bina B. Reasor the sum of $12,000 in full payment of my Farm consisting of 540 acres

. . .." The receipt was apparently witnessed by Joe Day and Tom Cary.

Having weighed the testimony relevant to the issues of authenticity of the Plaintiffs' Exhibits 1 and 5, and having carefully examined the many documentary exhibits introduced, we do not hesitate in agreeing with the findings of the trial chancellor that the signatures, "W. L. Wright," on the front and back of Exhibit 1 were forged; and it is clear to us, as was found by the chancellor, that the "receipt," Plaintiffs' Exhibit 5, although bearing the authentic signature of W. L. Wright was not genuine but spurious, in that the words above the signature were typed in without the knowledge of Wright.

An authentic instrument, "Plaintiffs' Exhibit 2," signed by W. L. Wright and C. H. Reasor and witnessed by "S. P. Martin M. D.," was introduced into evidence. The exhibit reads as follows,

"This contract made & entered into by & between W. L. Wright & C. H. Reasor whereby the said W. L. Wright rents to the said C. H. Reasor a certain tract of land known as the Modern Woodman farm on Wild Cat, Miss Co. Missouri. The said C. H. Reasor is to receive Three fourth of all crops grown on farm and is to pay all Labor, Cash, furnish all Teams, Tools etc. to cultivate the said Lands. The said C. H. Reasor is to deliver W. L. Wrights 1/4 interest to at the market that he may designate. The said W. L. Wright hereby conveys to the said C. H. Reasor and his wife Vina Reasor any interest That he may have in said Land That he now Holds by Contract with Claude Green Said Land is in . . .. The said W. L. Wright retains all his interest in said Land during His life time. This Contract made & entered into this the 28th day of May 1936, at East Prairie Mo."

In 1937 Green conveyed the land to Wright by warranty deed, "I (Green) got my notes back" and "I forget the exact amount of money, but it was about what I put in."

By warranty deed (Plaintiffs' Exhibit 4) dated and acknowledged January 29, 1941, and recorded August 24, 1942, W. L. Wright conveyed plaintiffs 280 acres of the 540-acre tract, the recited consideration being one dollar, and "a Lifetime Friendship, and affection." The conveyance was subject "to present incumbrances. It is understood that grantees assume payment only of that part of loan covering land conveyed according to prorata distribution of loan over whole farm."

January 29, 1941 (the date of the warranty deed from Wright to plaintiffs, Plaintiffs' Exhibit 4) there was of record a lien of a deed of trust securing the payment of Wright's notes for $1500 to the First Security State Bank, which lien was subsequent to the lien of a deed of trust of record securing the payment of Wright's note for $5000 to Geo. W. and Nella Langsdale. These two liens were released November 27, 1941. "Wright & Reasor" were partners

in some of their operations, "Farmers and Stockmen." The land was not carried as a partnership asset. The $5000 note to the Langsdales was paid off by a check on the partnership account, but the amount was subsequently shown by Reasor as having been paid by Wright. As stated, the warranty deed (Plaintiffs' Exhibit 4) was recorded August 24, 1942. April 21, 1942, Wright had executed a deed of trust to secure the payment of his notes aggregating $15,000 to Geo. W. and Nella Langsdale.

W. L. Wright negotiated the $15,000 loan; plaintiff C. H. Reasor. was present; neither made any statement "about the land." Some of the money borrowed "was to go to the church" of which, we infer, Wright and Reasor were members. Wright "did all the talking." It was arranged the money borrowed was to be paid over by the Langsdales in two installments; the second installment of $5000 was to be paid the following July 1st, but "meantime Reasor and Wright came in and Mr. Reasor says, 'We'll need the money before July,' and Mr. Wright says, 'I am the one that has got the money and our agreement was that he (Langsdale) could pay me the first of July and that is when I am expecting the money.'"

Other facts will be stated in the course of this opinion.

While Wright was not vested with the legal title until 1937 (deed, Green to Wright, June 17, 1937), it is noted that, by the instrument of May 28, 1936, Wright "hereby" conveyed plaintiffs "any interests" that he had. Now if Wright had an equitable interest in the land (that is, for instance, an interest entitling him to invoke the power of a court of equity in enforcing a claim for the legal title) Wright's equitable interest, right or title would be conveyed, although his executed and delivered conveyance were but a mere quitclaim deed. Generally a quitclaim deed operates as a conveyance of any right, at law or in equity, the grantor has. But such a deed does not import the grantor has any interest at all, and as a rule such a deed is ineffectual in passing to the grantee any right or title subsequently acquired by the grantor. Douglass v. Hammel, 313 Mo. 514, 285 S. W. 433; Williams v. Reid, Mo. Sup., 37 S. W. 2d 537; 44 A. L. R. 1276; 162 A. L. R. 566. The rule admits of exceptions, however.

The words of the instrument of 1936 expressed, "W. L. Wright hereby conveys" any interest he might have. The words import a present transfer or conveyance of whatever interest Wright then had, and the words do not indicate it was contemplated another or future instrument was to be executed in order to transfer such interest. Compare Powell v. Hunter, 204 Mo. 393, 102 S. W. 1020.

The instrument plainly shows Wright considered he "held" the described land by contract with Claude Green, who held at least the legal title. Now Green, who had the legal title, had not exercised the rights of an owner and, when he had got his "notes back" and "about what" he put in, Green conveyed the land to Wright. We have

seen Green had originally advanced the $500 down payment, and Green did not pay the notes. These circumstances, in conjunction with the circumstances of the original purchase of the land and its subsequent occupancy by Wright (or his partner, or Wright's tenants, including Green) point to the conclusions that Wright was the real owner (when the instrument of 1936 was executed) and that Green, who then held the legal title, was obligated to convey to Wright when Wright had paid the Green notes and had reimbursed Green for the money advanced. If Wright did have the equitable title and conveyed any interest he had to plaintiffs, he must have conveyed his equitable title to plaintiffs and the legal title subsequently vested in him by virtue of the equitable title he had conveyed to plaintiffs must have inured to the benefit of plaintiffs. "To state it another way, if a vendor who sells by a quitclaim deed land to which he holds the equitable title afterwards secures the legal title, he will hold the legal title for the benefit of ▇▇▇ his vendee and cannot assert title under it or in opposition to his vendee. This is so because by his quitclaim deed he has parted with all the title he had, and if he owned the equitable title, he transferred it to his vendee, who being entitled to all the benefits, it conferred on him whatever remedy his vendor would have against the person who conveyed to him the equitable title. And so to permit the vendor to set up against his vendee any right he acquired under his equitable title would be allowing him to break the covenants of his quitclaim deed, which transferred to his vendee all the title and interest he had." Johnson v. Johnson, 173 Ky. 701, at pages 706-707, 191 S. W. 672, at page 675; Annotation 58 A. L. R., at page 367; 16 Am. Jur., Deeds, § 345, p. 638. And compare Johnson v. Johnson, 170 Mo. 34, 70 S. W. 241. But, of course, the executed instrument, if construed to be a "deed of conveyance," must have been validly delivered in order to effect the present transfer of such an equitable interest. If the instrument, executed as a deed, was invalid for want of delivery, it should not be treated as a completed contract to convey. Parker v. Parker, 67 Mass. (1 Gray) 409; Overman v. Kerr, 17 Iowa 485.

▇▇ "Delivery is essential to the validity of a deed; the grantor must part with dominion and control over the instrument with intent that it take effect in the present; the delivery need not be made to the grantee, but may be made to a third person for him." Forster v. Clark, 351 Mo. 59, 171 S. W. 2d 647.

Dr. Martin, plaintiffs' witness, had written the instrument of May 28, 1936 ("Mr. Wright and Mr. Reasor came to my office and asked me to draw up the document"); Dr. Martin wrote "what he (Mr. Wright) said. . . . I think Mrs. Reasor was there." After the contract was signed "Mr. Wright and Mr. Reasor . . . asked me to keep the contract." Dr. Martin does not remember anything else said about the contract at the time, "they just asked me to

keep it." He kept "the contract in a lockbox until after Mr. Wright died, and Mr. Reasor came up one day (something like a month or two after Mr. Wright's death) and asked me if I still had it. I found it in the box and gave it to Mr. Reasor." This was the first time anybody had asked about the contract "after it was left with" Dr. Martin.

Did Wright, when the instrument of 1936 was signed and left with Dr. Martin, part with all dominion and control over the instrument intending it to take effect and pass Wright's (equitable) title to plaintiffs as a present transfer thereof? The controlling element is the grantor's intention, and such intent may be manifested by words or acts or both. Sneathen v. Sneathen, 104 Mo. 201, 16 S. W. 497; Schooler v. Schooler, 258 Mo. 83, 167 S. W. 444; Klatt v. Wolff, Mo. Sup., 173 S. W. 2d 933.

A witness (Claude Green) testified Wright had made statements in the spring of 1937 that "he felt like if he had any interest at all in any of the property he wanted to leave it for Mr. and Mrs. Reasor because they had been so good to him." Wright said "he had Dr. Sam Martin to draw up a contract between himself and Mr. Reasor . . . it was just protection for the Reasors." Plaintiffs' son testified of statements of Wright in 1940 to the effect that, "some day this will all be yours because it belongs to your dad and mother." Another witness told of Wright's statement in the spring of 1936 that the land "belonged to Mr. Reasor and Mrs. Reasor."

Plaintiffs had the burden of establishing their claim of title which was dependent on an alleged conveyance to them. The delivery of the conveyance was disputed. A party claiming title under a deed is bound to prove its delivery, since delivery is essential to a deed's validity. Tyler v. Hall, 106 Mo. 313, 17 S. W. 319; 16 Am. Jur., Deeds, § 372, p. 650. This is not a case where a party seeks to invalidate a deed on the ground of nondelivery as are the cases of Zumwalt v. Forbis, 349 Mo. 752, 163 S. W. 2d 574; and Klatt v. Wolff, supra, cited by plaintiffs-respondents.

There was no evidence Wright had actually delivered the instrument to plaintiffs as in the case of Zumwalt v. Forbis, supra. The plaintiffs' evidence showed the deed was procured from Dr. Martin after the death of Wright, and the evidence showed the circumstances of the preparation and signing of the instrument and its possession by Dr. Martin. The instrument was not delivered by Wright to Dr. Martin with instructions to him to keep it until Wright's death and then to deliver it to plaintiffs as in the cases of Mendenhall v. Pearce, 323 Mo. 964, 20 S. W. 2d 670; and Meredith v. Meredith, 287 Mo. 250, 229 S. W. 179. The instrument was not delivered to a third person with instructions to record as in the cases of Southern v. Southern, Mo. Sup., 52 S. W. 2d 868; and Fenton v. Fenton, 261 Mo. 202, 168 S. W. 1152. The plaintiffs, already in occupancy or

possession of the land, were not put in possession by the grantor upon the execution of the instrument as were the grantees put into possession of the lands described in the deeds involved in the cases of Schooler v. Schooler supra; and Dickson v. Maddox, 330 Mo. 51, 48 S. W. 2d 873. Dr. Martin's delivery of the instrument to plaintiff C. H. Reasor was not pursuant to any direction on the part of Wright. Neither of the parties to the instrument gave Dr. Martin any instruction relating to its delivery. While Wright did not expressly reserve dominion over the instrument or the right to recall it, Dr. Martin was not directed to keep the instrument for the use and benefit of plaintiffs nor did Wright direct that the instrument was to be kept until his death and then delivered to plaintiffs. Compare Meredith v. Meredith, supra. The absence of such a direction is in some cases decisive. Peters v. Berkemeier, 184 Mo. 393, 83 S. W. 747; Van Huff v. Wagner, 315 Mo. 917, 287 S. W. 1038. (There was no evidence at variance with the testimony of Dr. Martin, plaintiffs' witness, that Wright and Reasor "just asked me to keep it.") By what token did Wright manifest his intention that Dr. Martin was to hold the instrument only for the use and benefit of plaintiffs or was authorized or empowered to subsequently deliver the instrument only to plaintiffs? In the case of Schooler v. Schooler, supra, the bank cashier to whom the grantor had handed the deeds, could not "recollect either the words or the substance" of the statement the grantor had made at the time. But the facts and circumstances surrounding the transaction pointed "unerringly to the conclusion" that the statement made by the grantor to the cashier which the cashier did not recollect was, in substance, that the deeds were to be delivered to the named grantees. Among other circumstances, the evidence showed the grantor, immediately after the execution of the deeds, put the grantees in possession of the particular lands conveyed to them. In our case plaintiffs' possession is consistent with, and could be reasonably said to be referable to a landlord and tenant relation. We see by the instrument itself plaintiff C. H. Reasor was made tenant of Wright.

In the case of Forster v. Clark, supra, the circumstances of a grantor's continued exercise of ownership and control over the land were considered as an indication the grantor did not intend to part with the dominion over the deed or intend that it take effect as a present transfer. Not all of Wright's subsequent acts indicatory of ownership necessarily tended to negative his intention to then vest the remainder in plaintiffs by the execution of the instrument of 1936, that is, some of the shown subsequent acts of Wright indicatory of ownership were consistent with an exercise of the rights of an owner of a life estate. However, he did, by his subsequent acts and conduct, strongly indicate he considered he was the absolute owner of the land. He accepted the 1937 conveyance from Green purportedly conveying the

whole title. He executed a deed to plaintiffs, in 1941, conveying the whole title to the 280 acres of land; the deed contained the covenant that he was lawfully seized of an indefeasible estate in fee simple in the land conveyed (part, as stated, of the tract described in the instrument of 1936); he was the active agent in the negotiation (prior to the delivery of the warranty deed to plaintiffs, we infer) of a loan to be secured by a lien upon the whole fee simple estate. Wright's retirement of the $5000 encumbrance with his own money was more the act of a fee simple owner than of a life tenant. These subsequent acts of ownership seem inconsistent ▬▬▬ with conduct to be expected of one who had theretofore delivered any instrument with an intention to then convey an interest in remainder. Plaintiff C. H. Reasor, who signed the instrument of 1936 and who necessarily knew its terms, its purpose and the circumstances of its execution, was present during and stood passively by or was a party to all of the subsequent transactions whereby Wright by his words and acts was manifesting ownership of the land by the exercise of the rights and the incurrence of the obligations of an owner in fee simple. (It has been noticed that meanwhile he was completing the fabrication of a document purporting to evidence his purchase and the payment of the purchase price of the whole 540-acre tract.) Reasor's conduct was scarcely that of one who considers himself a remainderman. Notwithstanding the finding of the trial chancellor, to whose findings we defer upon factual issues where there is a conflict of verbal testimony, we perform our duty to weigh the evidence and make our own finding.

We have noted the trial chancellor believed "the overriding, compelling *fact* in this case is that W. L. Wright intended that this land be that of the Reasors after his use of the same had come to an end. This is apparent from beginning to end, and it outcrops all through the evidence." Truly there was testimony of conversations, such as we have set out supra, wherein Wright is quoted as saying, "he wanted to leave it" for the Reasors, and "it belonged" to the Reasors. Such casual statements (although they may properly be and have been by us considered) are not always to be relied upon, and are, in themselves, insufficient in supporting a decree determining the transfer of title to land. Peters v. Berkemeier, supra.

Considering and weighing all of the evidence we have stated relevant to the issue of delivery, we are constrained to find the evidence does not establish that Wright delivered the instrument of 1936 intending it to take effect as a present transfer to plaintiffs.

The judgment and decree for plaintiffs should be reversed and the cause remanded with directions to try and determine the issues of accounting; to enter a judgment and decree determining the fee simple title to the described 260-acre tract to be in defendants, heirs at law; and to enter an order of delivery of possession of the 260-acre

tract to defendant, administrator, pursuant to the shown order of the Probate Court of Mississippi County.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.